Per Curiam :
Plaintiff, a Reserve officer, was released from extended active duty, not for physical disability, on July 1, 1946. He claims he was then unfit for military duty and should have been retired for physical disability and be entitled to retired pay. He bases this action on the alleged arbitrary and capricious action of the Army Board for Correction of Military Records in not correcting his record to show entitlement to retired pay.
Fitness for duty is relative to the duties to be performed. See Patten v. United States, 161 Ct. Cl. 131 (1963). The facts as found by a Commissioner of this court show that at the time plaintiff was released from active military duty he was physically capable of performing any duties of an administrative nature that might be assigned to an Army officer, and was physically incapable only of strenuous physical exertion. Accordingly, this plaintiff has failed in his burden to show that he was incapacitated at the time he was released. Consequently, the action of the Correction Board cannot be said to be arbitrary or capricious. Nor was there error shown on the part of the Army in effecting plaintiff’s release for reasons not physical. Plaintiff is not entitled to recover in this action, and his petition is dismissed.
The defendant has raised an issue of the 6-year statute of limitations, 28 U.S.C. § 2501, which, in the light of the above, is not reached or discussed in this opinion.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Mastin G. White, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff is a citizen of the United States and is now a resident of Glencoe, Illinois.
2. The plaintiff enlisted in the Army of the United States on September 10,1942.[1] He served on active duty as an en *742 listed man. from March. 12, 1943, to January 26, 1945. On the latter date, the plaintiff was commissioned a second lieutenant, Infantry, A.U.S. He was promoted to first lieutenant on October 3,1945.
3. When the plaintiff enlisted in the Army, when he went on active duty as an enlisted man, and when he became an officer, and throughout the period up to October 1945, the plaintiff was found to be, and was, fit for general service. He was on active general service from March 12,1943, until October 1945, when he became ill, as indicated in subsequent findings.
4. At the time when the plaintiff became ill in October 1945, he had been detailed to perform administrative duties with the Army in Berlin, Germany. He was the administrative officer in the Visitors Bureau, Office of Military Government.
5. In October 1945, the plaintiff contracted bulbar and spinal poliomyelitis in line of duty. He was hospitalized for the illness on October 19,1945.
6. (a) In bulbar poliomyelitis, there is an involvement of the poliomyelitic virus with the functional centers within the brain stem. This disease is often fatal. However, if the patient recovers, the recovery is usually complete, with no permanent residuals or after effects from the disease.
(b) In spinal poliomyelitis, there is an involvement of the poliomyelitic virus with the motor fibers of anterior horn cells of the spinal cord. A patient may recover from spinal poliomyelitis but have permanent residuals from the disease in the form of permanent damage to affected nerve fibers, with resulting atrophy of and weakness in the muscles controlled by the particular nerve cells.
(c) The treatment of poliomyelitis is part of the medical specialty known as orthopedics.
7. The plaintiff’s attack of poliomyelitis was critical. For a time, he was near death and sustained almost complete paralysis.
8. Because of the poliomyelitis, the plaintiff was hospitalized in the European Theater of Operations from October 19, 1945, to February 28, 1946, when he was returned to the United States. Thereafter, he was hospitalized in Army *743 hospitals within the United States until May 16,1946. The last of these hospitals was the Camp Upton Convalescent Hospital at Camp Upton, New York, where the plaintiff was a patient from March 5 to May 16, 1946.
9. During the course of the hospitalization mentioned in finding 8, the plaintiff recovered from both the bulbar and the spinal poliomyelitis, and regained his freedom of motion and movement. However, the plaintiff sustained permanent residual nerve and muscle damage as the effects of the spinal poliomyelitis. There was permanent damage to the motor fibers of the anterior horn cells of the spinal cord that controlled the use of the left infraspinatus muscle (which covers the back of the lower two-thirds of the scapula or shoulder blade), the posterior half of the left deltoid muscle (which covers the shoulder and forms the rounded cap over the shoulder), and the right quadriceps femoris muscle (which is the large muscle mass in the front of the thigh). As a consequence, the muscles mentioned in the preceding sentence began to atrophy from lack of use. The result was a weakness of the left arm and shoulder, which adversely affected the ability of the plaintiff to lift heavy objects, and a weakness of the right leg, which adversely affected the ability of the plaintiff to stand on that leg for long periods of time or to use it for strenuous work or exercise.
10. While a patient in the Camp Upton Convalescent Hospital, the plaintiff was started on a program of physiotherapy. This included exercises designed to develop other muscles in order to compensate as fully as possible for the loss of the use of the muscles mentioned in finding 9.
11. On May 2, 1946, the plaintiff was examined for orthopedic clearance by an orthopedic surgeon of the Army Medical Corps at the Camp Upton Convalescent Hospital, prior to the consideration of the plaintiff’s case by a disposition board at that hospital. In his report, the orthopedic surgeon expressed the opinion that the plaintiff did not need further hospital treatment, and he made the following recommendation:
Becommended disposition: Temp[orary] lim[ited] duty
*744 12. (a) The plaintiff’s case was considered by a disposition 'board at the Camp Upton Convalescent Hospital on May 10,1946. The plaintiff appeared before the board.
(b) The disposition board made the following diagnosis of the plaintiff’s condition:
Poliomyelitis, anterior, sequelae of, manifested by weakness and atrophy of the muscles of the left shoulder girdle and right thigh. LOD Yes Improved.
The board recommended that the plaintiff “be returned to full military duty.”
(c) The report of the disposition board was approved by the commanding officer of the hospital on May 18,1946.
13. The plaintiff did not wish to remain on active military duty. Instead, he was anxious to return to civilian life in order that he might attend a graduate school or obtain employment. The plaintiff, who was eligible for separation from the active military service under the then current demobilization regulations, indicated his preference to the military authorities.
14. (a) On May 16, 1946, the plaintiff was ordered to the Separation Center at Port Dix, New Jersey.
(b) The plaintiff was given a complete terminal physical examination at the Separation Center on May 18,1946. The medical examiners made the following notation regarding the plaintiff’s bones, joints, and muscles:
Slight weakness left [sic] lower extremity and weakness and atrophy left shoulder IMS, Etiology-Sequelae of polio myelitis incurred October 1945 in Berlin Germany
They also made the following neurological notation:
* * * [Medical history shows] Polio left and right with residual paralysis left shoulder — atrophy deltord [sic] and weakness right leg.
The medical examiners found that the plaintiff was not permanently incapacitated for either general or limited service.
15. By orders dated May 18,1946, the plaintiff was granted a 43-day period of terminal leave beginning May 20, 1946; and it was further ordered pursuant to demobilization regu *745 lations RE 1-1 1946 that, at tbe end of the plaintiff’s period of terminal leave, he would be released from active military duty and revert to an inactive status, “not due to physical disability,” effective July 1,1946.
16. For about 1% years after his release from active military duty, the plaintiff continued the physical exercises mentioned in finding 10. He exercised for a period of from y2 hour to iy2 hours each day. The capacity of other muscles to compensate for the loss of the use of the muscles referred to in finding 9 was increased. Despite the improvement in the plaintiff’s general condition, there was no improvement in the particular muscles that had been affected by the poliomyelitis, as those muscles were permanently atrophied; and the plaintiff never fully regained his normal strength in the left arm and shoulder and in the right leg.
17. (a) In connection with the plaintiff’s release from active military duty, he applied for and received a commission as first lieutenant in the Officers’ Reserve Corps of the Army. This commission was dated May 19, 1946; and the plaintiff was thereafter carried on the rolls of the Organized Reserves until April 1, 1953, when his Reserve commission terminated by operation of law.
(b) In filling out questionnaires submitted to him as a Reserve officer by the Army, the plaintiff indicated on March 16,1949, on May 29, 1951, and on April 13,1952, that he considered himself physically fit for limited service.
(c) The plaintiff was given a physical examination as a Reserve officer on July 18, 1951; and at the time he stated to the medical examiner that his health was good, except for limitations due to residual conditions in the left arm and shoulder and in the right leg due to poliomyelitis. On the basis of this physical examination, the plaintiff was found by the medical examiner to be qualified for retention in the active Reserves for limited service.
18. (a) On May 18,1946, the plaintiff applied to the Veterans Administration for compensation based on physical disability resulting from active military service.
(b) On May 2,1947, the plaintiff was given the following rating by the Veterans Administration:
*746 8511 Thirty Percent (30%) from 7/2/46
POLIOMYELITIS, RESIDUALS OF, WITH WEAKNESS AND ATKOPHY OF MUSCLES OF LEFT HAND, FOREARM, ARM AND SHOULDER GIRDLE RATED ANALA-GOUS TO PARALYSIS, MIDDLE RADICU-LAR GROUP INCOMPLETE, MODERATE
8526 Twenty Percent (20%) from 7/2/46
POLIOMYELITIS, RESIDUALS OF, RIGHT, THIGH MUSCULATURE WITH WEAKNESS. RATED ANALAGOUS TO PARALYSIS ANTERIOR CORNEAL NERVE
Combined Rating: 40% from 7/2/46
(c) The rating referred to in paragraph (b) of this finding has been continued by the Veterans Administration until the present time.
19. Following the plaintiff’s release from active military duty in 1946, he received educational benefits from the Veterans Administration in the form of a 2-year course of instruction in the Graduate School of Business Administration of Harvard University. Pie graduated from that institution in 1948 with a master’s degree in business administration.
20. (a) After his graduation from the Harvard Graduate School of Business Administration, the plaintiff was employed by William Filene’s Sons Company from 1948 to 1951 in the department store which that company operates in Boston, Massachusetts. While employed in Filene’s department store, the plaintiff had various assignments that required substantial physical exertion, such as the handling of stock and the supervision of sales personnel. The plaintiff’s weakness in the left arm and shoulder was a handicap to him in lifting merchandise and placing it in shelves, and the weakness in his right leg was a handicap in the performance of supervisory duties on the selling floor. This weakness was a factor in causing the plaintiff to decide to seek some other type of employment.
(b) The plaintiff left Filene’s department store in May or June of 1951 and became comptroller of Brandéis University in Waltham, Massachusetts. The plaintiff’s weakness, as *747 mentioned in previous findings, was not a handicap to him in the performance of the duties of his position with Bran-déis University. Those duties were exclusively administrative in nature. The plaintiff remained with Brandéis University for 8 years.
(c) The plaintiff is now administrative vice president of a publishing company in Chicago, Illinois. There is no evidence in the record tending to indicate that the weakness resulting from the plaintiff’s attack of poliomyelitis interferes with the performance by the plaintiff of the duties of his present position.
21. (a) Under the date of March 21, 1958, the plaintiff submitted to the Army Board for Correction of Military Records an application asking that his military records be corrected so as:
* * * to grant me status, effective as of date of separation, of retirement because of physical disability and incapacity from active service in line of duty as an officer.
In his application, the plaintiff stated that he desired to appear before the board.
(b) In connection with his application for the correction of his military records, the plaintiff was represented by counsel. The plaintiff’s counsel submitted a comprehensive brief to the board.
(c) The plaintiff’s application for the correction of his military records, together with the related papers, was referred by the Board for Correction of Military Records to the Surgeon General of the Army for consideration. The records were reviewed in the Office of the Surgeon General; and the following opinion was expressed on behalf of the Surgeon General to the Army Board for Correction of Military Records under the date of July 2,1958:
_ It is the opinion of this office that records fail to provide support to applicant’s contention that he should have been retired for physical disability in 1946 under the rules, laws, regulations and policies in effect at that time.
(d) The plaintiff’s application was denied by the Army Board for Correction of Military Records on September SO, *748 1959. The plaintiff was not accorded a hearing by the board.
22. The plaintiff’s petition was filed with the court on May 16,1958.
23. (a) At the time of the plaintiff’s release from active military duty, the matter of the retirement of Army officers for physical disability was governed by the provisions of Army Regulations 605-250 (June 1, 1943). Those regulations covered the appointment, composition, duties, powers, and procedure of Army retiring boards; and they provided for the reference to such boards of, and the holding of hearings on, cases (among others) “where an officer may be considered physically * * * incapacitated for active service * * AB 605-250 further provided in part as follows:
29. General. — a. At the close of the hearing the board will go into closed session for the purpose of determining whether or not the officer is incapacitated for active service; and if so, whether said incapacity is (or is not) the result of an incident of service, the cause of such incapacity, and whether or not such cause is an incident of service. See B.S. 1249, 1251, 1252 (M.L. 1939, sees. 324,325).
* ❖ ❖ ❖ ❖
30. Incapacity, character of, etc. — a. Character.— Incapacity for service by reason of physical disability relates to a permanent incurable disease, injury, or infirmity which prevents the reasonable fulfillment of the purpose of the officer’s employment. Such employment embraces the duties of his office in peace and war which are imposed by law, regulation, orders, or custom of the service.
b. Permanency. — The physical disability, on account of which the board is authorized to find an officer incapable of performing the duties of his office, must be permanent; that is, such that the removal of the disability within a reasonable time is highly improbable. If, however, the disease or injury is curable or of such character as to yield to treatment, even though a cure may require considerable time, the disability is not permanent. The test should be, Is the disease or injury curable or incurable? If the disability is incurable within a reasonable time, the board should find the officer incapacitated. See Dig. Op. JAG, 1912, pp. 985b; 986b(1).
*749 37. Definition of “limited service.” — A limited service officer is one wbo is disqualified under current physical standards for general military service, but who has been classified, following thorough physical examination, as physically fit for certain types of active military assignments commensurate with his physical qualifications.
38. Consideration of officers for limited service duties. — Army retiring boards will give due consideration to the possible utilization in limited service assignments of officers brought before it, particularly of those who are obviously well trained, efficient, and capable of performing limited service duties. * * * The fact that an officer is capable of performing limited service duties will not necessarily preclude his retirement.
39. Recommendation for limited service. — a. In the event an officer is ordered before a retiring board and the board is of the opinion that he is capable of performing limited service, the board is authorized to recommend that the officer be considered for limited service assignment.
(b) Army Regulations 605-250 were supplemented by Technical Manual 12-245 (October 1, 1945). That manual provided in part as follows:
23. Nature of 'permanent incapacity for acti/oe service. a. The entitlement of eligible military personnel to retirement benefits for disability must be predicated in part upon a finding by a retiring board that a disability exists within the meaning of the various statutes concerned. Thus in cases involving officers and warrant officers of the Regular Army the retiring board must initially determine the existence of “incapacity for active service” within the meaning of sections 1251 and 1252, Revised Statutes (10 U.S.C. 933-4). In cases involving officers, warrant officers and flight officers who are not officers of the Regular Army the retiring board must decide whether such individuals have incurred a “disability” within the meaning of section 5 of the act of 3 April 1939 (53 Stat. 557), as amended (10 U.S.C., Sup. IY, 456), that is, a permanent incapacity for active service. * * * If the board finds that disability exists within the meaning of the appropriate statutory phrase it will make a finding that the officer before the board is “permanently incapacitated for active service” * * *.
b. The word “disability” as used in section 5 of the act of 3 April 1939, as amended, with respect to retirement pay benefits means such disability as would constitute a basis for the retirement of Regular Army Officer per *750 sonnel. Thus, what constitutes “incapacity for active service” for Regular Army officers likewise constitutes “disability” for officers who are not Regular Army officers.
c. The question whether an officer of the Regular Army is incapacitated for active service is one of fact. An officer is incapacitated for active service when he is permanently physically or mentally incapable of performing full military duty, field as well as garrison, in both peace and war. The fact that an officer may be capable of performing limited military service with the supply arms and services does not prevent his retirement under section 1251, Revised Statutes, supra,,, by reason of being permanently incapacitated for active service.
d. Incapacity for active service is a permanent condition, resulting from an incurable disease, injury or infirmity of such a character as to prevent the reasonable fulfillment of the officer’s employment. Such employment embraces the duties of his office in peace and war which are imposed by law, regulation, orders, or custom of the service. The physical disability, on account of which the board is authorized to find an officer incapable of performing the duties of his office must be permanent; that is, such that the removal of the disability within a reasonable time is highly improbable. If the disease, injury or infirmity is curable within even a considerable time the disability is not permanent. However, if the disease, injury or infirmity is incurable within a reasonable time the board should find the officer permanently incapacitated (see par. 60a).
$ $ ‡ $
60a. * * * (1) The incapacity for active service must be permanent. An incapacity for active service is permanent if its removal within a reasonable time is highly improbable. However, if a disease, injury or infirmity is curable within even a considerable time the incapacity for active service which results therefrom is not permanent. Whether a disease, injury or infirmity is curable or incurable is a question of fact which must be decided by a retiring board on the basis of the medical evidence produced at the hearing. Ordinarily officers will not appear before a retiring board until they have received adequate medical treatment, thus medical witnesses may be expected to express the opinion in many cases that a disease, injury or infirmity which has not been cured by the time of the hearing and will not be cured within approximately a year, is incurable within a reasonable time.
*751 (2) * * * [A]n officer is permanently incapacitated for active service when he becomes permanently physically or mentally incapacitated for the performance of full military duty, field as well as garrison, in both peace and war. The fact that an officer may be capable of performing limited military service with the supply arms and services does not prevent a finding that he is incapacitated for active service. With respect to such an officer active service means general service. In considering such a case retiring boards will give due regard to the provisions of Army Regulations 40-100 and 40-105 winch set forth the physical standards for the commission and appointment of commissioned officers, warrant officers and flight officers for general military service. However, the mentioned regulations will not be as strictly interpreted as for appointment or entrance on active duty. Thus officers may be found capable of performing active (general) service even though they have diseases, injuries or infirmities which would disqualify them for original appointment, provided such diseases, injuries or infirmities are of such a nature and degree as not to affect adversely the performance of active (general) service (including oversea duty) considering the individual’s age, grade, branch and military occupational speciality. Appropriate consideration will also be given to a record of satisfactory performance of general service over a reasonable period of time.
$ $ $ $ $
60A * * * (1) When a retiring board is of the opinion that an officer appearing before it is capable of performing limited service, the board is authorized to recommend that he be considered for a limited service assignment. * * *
(2). An officer is capable of performing limited service if he is physically fit for certain types of active military assignment commensurate with ibis physical condition even though he is disqualified under current physical standards for general military service.
(3) The recommendation of a retiring board that an officer be considered for a limited service assignment is not inconsistent with a finding of incapacity for active service and does not preclude his retirement or certification for retirement pay.
24. While the plaintiff was hospitalized in the Camp Upton Convalescent Hospital, he was aware that some patients were being considered for physical disability retirement. However, the plaintiff did not, in connection with his release *752 from active military duty or at any other time, request that his case be considered by an Army retiring board. No medical or other personnel of the Army suggested to the plaintiff that he make such a request.
25. At the time when the plaintiff was released from active military duty effective July 1,1946, he was physically capable of performing any duties of an administrative nature that might be assigned to an Army officer. However, because of the permanent nerve and muscle damage resulting from the attack of poliomyelitis referred to in previous findings, the plaintiff was physically incapable of performing those duties of an Army officer that required strenuous physical exertion. Such incapacity was a permanent one.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is dismissed.

 The plaintiff enlisted under the name of Bernard Samuel Goomnitz, and the records relating to the plaintiff’s active military service carry that name. The plaintiff’s name was changed to Bernard Gordon on April 3, 1948, pursuant to an order of the Supreme Court, State of New York.