ceedings pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, WHITAKER, and LITTLETON, Judges, concur.

Richard H. UHLEY

v.

The UNITED STATES.

No. 57-53.

United States Court of Claims.

Jan. 16, 1957.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a suit to recover installments of disability retirement pay which plaintiff alleges were wrongfully and illegally denied him by the United States, acting through the Secretary of the Air Force, from December 24, 1945, following his release from active duty without being retired for disability, to the date of any judgment herein, less any disability compensation received by plaintiff from the Veterans Administration.

This case was before this court previously on defendant's motion to dismiss the petition on the ground that it was barred by our six-year statute of limitation, 28 U.S.C.A. § 2501. Following this court's decision overruling defendant's motion to dismiss, 121 F.Supp. 674, 128 Ct.Cl. 608, plaintiff's case was tried on the merits before a commissioner of the court.

It is plaintiff's position that his physical condition at the time he was released to inactive duty in 1945, was such that he should have been retired for physical disability and have received disability retirement pay as provided by statute, 10 U.S.C.A. § 971 et seq.,[1] and that the action of the Board for Correction of Military Records and the Secretary of the Air Force in 1952 denying his application to have his military records corrected to place him in the status of a person retired for physical disability was, under all of the facts and circumstances, arbitrary and therefore illegal.

Plaintiff enlisted in the Army Air Force as an aviation cadet on May 22, 1943, and was appointed Second Lieutenant, Air Corps, Army of the United States, on May 23, 1944. On October 30, 1944, he was sent to the European Theater of Operations as a fighter pilot. On January 22, 1945, while on his fifth mission and while escorting bombers over Germany, fire developed in an engine of his plane resulting in an explosion. He was forced to bail out in his parachute at an altitude of 8,000 feet. After striking the ground, he was unconscious for about 28 hours. Plaintiff was taken prisoner and remained in that status until liberated on April 17, 1945.

As a result of plaintiff's fall to the earth, he suffered injuries to his head and body, including concussion of the brain, fracture of the left skull and jaw, fracture of the right ankle and fibula, ruptured artery in left temple area, ruptured ligaments in right knee and dislocation of the knee, and anterograde amnesia for several days.

From the time of his injury on January 22, 1945 to October 28, 1945, plaintiff spent most of his time in hospitals or on convalescent leave. On October 28, 1945, plaintiff underwent a terminal physical examination which stated in pertinent part as follows:

"*40. Bones, Joints, Muscles.—*Unstable rt. knee joint symptomatic. N. D.

"*47. Neurological.—*Normal.

"*48. Psychiatric.—*Normal.

"*54. Is Individual Permanently Incapacitated for General Service?* —No."

Plaintiff departed on terminal leave on November 6, 1945, and was relieved from active duty and reverted to inactive status not by reason of physical disability effective December 24, 1945. He had been appointed a Second Lieutenant, Air Corps Reserve, on October 30, 1945.

On March 14, 1946, plaintiff was rated 30 percent disabled from December 25,

---

1. Now 10 U.S.C.A. § 1201 et seq.

1945, by a Veterans Administration rating board, due to an unstable right knee. On August 19, 1947, plaintiff was again rated by the Veterans Administration and awarded a combined rating of 30 percent from December 25, 1945 to January 9, 1947, and 60 percent from January 10, 1947. The additional disability rating was based on findings of encephalopathy, traumatic, manifested by headaches, dreamy states and emotional irritability, and traumatic arthritis of the right ankle (findings 17, 18, and 19).

From the date of plaintiff's appointment in the Air Corps Reserve until February 12, 1949, plaintiff served in the Reserve on a flying status and accumulated 178 retirement points. During this time he flew AT–6 airplanes. On February 12, 1949, plaintiff was found to be physically disqualified for flying duty with the Reserve and on June 30, 1949, he filed an application to be assigned as an honorary member of his Reserve unit because of his disabilities.

On May 16, 1952, plaintiff filed an application with the Air Force Board for the Correction of Military Records. This application requested that his records be corrected as follows:

"To show that I was permanently incapacitated for active service at the time of my separation and should have been retired for physical disability with retirement pay."

The Board convened on November 5, 1952, to consider plaintiff's application. The plaintiff personally appeared before the Board to give testimony and was represented by counsel. Plaintiff called no witnesses other than himself at the hearing. The Board rendered its opinion on November 15, 1952. In making its decision the following documentary evidence was considered by the Board:

(1) Applicant's request for corrective action dated May 16, 1952.

(2) Brief of Examiner, Mr. Norman A. Compton.

(3) Transcript of testimony.

(4) Master personnel records of the applicant.

(5) VA medical records.

The findings of the Board of three members were unanimous. Such findings and recommendation are quoted in full below:

"1. The applicant has exhausted all remedies provided by law or regulation.

"2. The applicant was appointed Second Lieutenant, Army of the United States, 23 May 1944, having completed the prescribed course of Pilot instruction as an Aviation Cadet.

"3. On 22 January 1945, while on a bomber escort mission over Germany, he was forced to bail-out of his P–38 type aircraft when one of the engines caught fire. He was taken prisoner of war and remained in that status until return to Allied control on 17 April 1945.

"4. The medical records reflect that as a result of the parachute jump he fractured the left maxilla, right fibula and right ankle and also suffered concussion. He received treatment in German medical facilities and a splint was placed on his jaw and a cast was applied to the knee. Upon return to the United States he was hospitalized for three days and returned to duty with the diagnoses: 1. fracture, simple, complete, fibula, old, 2. fracture, simple, left jaw, partial, old, 3. concussion, 'old', brain, mild and 4, combat fatigue, moderate. On 26 July 1945, he was given an administrative admission to the hospital for determination of physical fitness. On 28 October 1945, he was discharged to duty and on the same date underwent a terminal physical examination and was found physically qualified for relief from active duty. He entered upon terminal leave 6 November 1945, and reverted to inactive status effective 24 De-

cember 1945, not by reason of physical disability.

"5. In his application to this Board the applicant asserts that at the time of his separation from the service he was not physically qualified to perform active military service. He states that he was separated not by reason of physical disability possibly by mistake, due to the circumstances attendant upon rapid demobilization. Shortly after separation from the service he was awarded a 30% disability rating by the Veterans Administration and this rating was later increased to 60%. Furthermore, his physical condition has been steadily deteriorating during the past year or two.

"6. The testimony of the applicant before the board discloses that since his separation from the service he has been continuously employed by the Dodge Corporation as a pattern maker. He testified that since separation he has lost no substantial amount of time from his job and that, 'Since '49 I have missed very little time * * * Fifty and '51 have been swell years.'

"7. The complete record in the case has been reviewed by the Surgeon General and it is his opinion that no corrective action is indicated from a medical standpoint.

"8. After careful consideration of the evidence presented, the testimony of the applicant before the Board and the official records together with the opinion of the Surgeon General, the Board is of the opinion that the applicant has failed to establish a reasonable showing of error or injustice in his case. Accordingly, the application should be denied.

"The Board recommends that:

"1. The application, dated 16 May 1952, of Richard H. Uhley, AO 778 302, before the Air Force Board for Correction of Military Records be denied.

"2. All necessary and appropriate action be taken in consonance with this recommendation."

On December 23, 1952, the Assistant Secretary of the Air Force approved the aforesaid recommendation of the Correction Board and denied plaintiff's application.

It is plaintiff's position that he should have been retired at the time that he was separated from active duty on December 24, 1945. There is nothing in the record to show that plaintiff made any request to the Army or the Air Force to be retired for physical disability prior to his application on May 16, 1952, to the Air Force Board for the Correction of Military Records. This is readily explained by the fact that the Armed Forces were not accepting applications for disability retirement by former members who had not been released from active duty for physical disability. This was in accordance with a ruling of the Comptroller General, 30 Comp.Gen. 409.

Upon the enactment on October 25, 1951, of P.L. 220, 82d Congress, 1st Session, 65 Stat. 655, 5 U.S.C.A. § 191a, amending Section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 837, the omission in the jurisdiction of the Armed Services to consider disability retirement was corrected and authority given to the Secretaries of the various services, acting through boards for the correction of military records, to entertain such applications and make payments where it was warranted. Plaintiff then, on May 16, 1952, filed his application with the Air Force for the Correction of Military Records to correct his records to show that he was disabled at the time of his release from active duty and entitled to retirement pay. Plaintiff contends that the Board in denying his application, and the approval thereof by the Secretary, amounts to an arbitrary, capricious or unsupported action.

 This court has said many times that it will not undertake to determine who is fit or unfit to serve in the

Armed Forces, Holliday v. United States, 128 Ct.Cl. 647; Beamish v. United States, 128 F.Supp. 158, 130 Ct.Cl. 767; Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765. Only when it appears that the denial of the retirement rights is clearly arbitrary, capricious or unsupported by the evidence, will this court step in and grant the retirement pay, Gordon v. United States, 121 F.Supp. 625, 129 Ct.Cl. 270; Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643; Girault v. United States, 135 F.Supp. 521, 133 Ct.Cl. 135.

In this case plaintiff was afforded a hearing by the Board, at which time all of his military and medical records were before that forum. Plaintiff was present and represented by counsel. He was given an opportunity to testify and present any evidence that would have helped prove his case. The Board submitted plaintiff's medical records to the Surgeon General for his opinion as to whether plaintiff qualified for retirement benefits. The opinion of the Surgeon General was adverse to the plaintiff and in light of this and all of the other evidence, the Board held that there was no error and plaintiff had not been done an injustice when he was released from active duty not by reason of physical disability and without retirement benefits. This action of the Board was thereafter approved by the Secretary of the Air Force.

■ In the hearing before a commissioner of this court plaintiff failed to put on any evidence tending to show the arbitrary nature of the decision of the Correction Board and approval thereof by the Secretary. If it were true that such denial of retirement by the Board and Secretary was illegal, plaintiff should have been prepared to prove this by introducing evidence tending to show that under the facts in his case he was in fact disabled for service at the time of his release from active duty. This could conceivably have been accomplished by expert medical testimony to the effect that injuries such as those sustained by the plaintiff were of such character as to have necessitated his release from service by reason of physical disability and to qualify him for retirement benefits. The fact that the Veterans Administration rated plaintiff 30 and 60 percent disabled, respectively, is not determinative of plaintiff's rights to disability retired pay, Holliday v. United States, supra. As was said in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 543, 97 L.Ed. 842; which we quoted in the Wales case, supra:

" * * * judges are not given the task of running the Army. * * * Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. * * * "

■ This case seems to this court to fall within that area in which we, as part of the judiciary, should not interfere in the Army's determination of who was disabled for active duty and who was not. Absent a clear showing that there was arbitrary action on the part of the Secretary of the Air Force in approving the denial of plaintiff's application to the Air Force Board for the Correction of Military Records we must deny plaintiff's claim. Plaintiff's petition will be therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN Judge, concur.

LARAMORE and WHITAKER Judges, concur in the result.