Per Curiam :
This case was referred pursuant to Rule 45 (since April 1, 1964, Rule 57) to Herbert N. Maletz, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusion of law. The commissioner has done so in a report filed October 24, 1963. Exceptions to the commissioner’s findings were taken by the plaintiff, briefs were filed by the parties, the case was submitted to the court on oral argument of counsel and thereafter supplemental memoranda were filed by the parties. Since the court is in agreement with the findings and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and his petition is dismissed.
OPINION OP COMMISSIONER
This is a suit for recovery of physical disability retirement pay under the provisions of section 402 of the Career Compensation Act of 1949, 63 Stat. 816 (1949), 37 U.S.C. §272 (1952).[1] Plaintiff, a retired Army Reserve Officer, was re *222 leased from active duty in December 1954, not by reason of physical disability, at which time he had arthritic ailments involving his knees and back. The issue in the case is his claim that the determination of the Secretary of the Army that he was fit for military duty at the time of his release and, therefore, not entitled to disability retirement pay, was arbitrary and capricious.
Plaintiff was born in 1899. He enlisted in the Army in 1918; served in World War I as an enlisted man; enlisted in the Illinois National Guard in 1928; and was commissioned as a Reserve Officer in 1932. He served on extended active duty as an officer from March 1941 to December 11, 1954, when he was relieved not by reason of physical disability, and reverted to Reserve status until September 1, 1959, when he retired. During this time he received successive promotions to the rank of Lieutenant Colonel.
While on extended active duty, plaintiff had various staff, administrative and command assignments, including a detail with the Air Force from 1942 to 1945 as Assistant Director of Training at Sheppard Field, Texas. On his last tour of active duty, he served overseas in Korea and Japan from about January 1953 to May 1954. In Korea his duties were administrative; in Japan he had assignments as a deputy camp commander, camp commander and post inspector. In May 1953 plaintiff requested a three-year extension of active duty beyond June 30, 1954, when his current tour of duty would expire. The request was denied by the Secretary of the Army in November 1953 because plaintiff was then overage in grade, having attained the age of 54.
Beginning in 1945, plaintiff had recurrent attacks of low back pain, with a particularly severe attack in March 1954 which required his hospitalization for about a month. He also had recurrent attacks of pain in his upper back and neck, accompanied by headaches and blackout spells; pain in both knees; and pain in his right elbow. Despite these ailments, during his last tour of active duty from January 1953 to April 1954, he performed his assignments (some of which involved considerable physical activity) conscientiously, thoroughly and in a most satisfactory manner. His *223 efficiency reports for that period indicate that he was in good physical condition and physically qualified for the performance of his duty. The reports reflect such comments as “physically qualified”, “in excellent physical condition”, and “no physical defects noted”. Plaintiff’s last commanding officer overseas indicated that he possessed the physical qualities expected for his grade and length of commissioned service; he also commented that plaintiff “was hospitalized for 26 days during the period of this report (February 12,1954 to April 25, 1954), suffering from physical difficulties with his back and knee which handicap him in the performance of duties expected of an officer of his rank.”
Plaintiff returned to the United States in May 1954 and in the following month was admitted to the United States Naval Hospital, Great Lakes, Illinois, preliminary to his release from active duty. On August 12,1954, a Disposition Board at the Hospital noted that his admission diagnosis was arteriosclerosis, owing to the fact that he had experienced blackouts prior to entering the hospital. It also noted that the blackouts were of an orthopedic nature related to an arthritic condition in plaintiff’s spine. The Board reported that a physical examination at the hospital disclosed that plaintiff had moderate osteoarthritis of the cervical and dorsal spine; minimal osteoarthritis of the lumbar spine; and marked osteoarthritis of both knees. It diagnosed plaintiff’s condition as degenerative joint disease, multiple, due to unknown cause; it found that the disease originated in 1945; that plaintiff was incapacitated for further military duty on July 22, 1954; that the cause of incapacity was incident to service; and that the disability was permanent. The Board recommended that plaintiff appear before a Physical Evaluation Board.
Plaintiff appeared before a Physical Evaluation Board at Fort Sheridan, Illinois, on October 19, 1954. In addition to testifying in person, he introduced a sworn statement from his last commanding officer overseas describing his physical condition and concluding with the comment that “A fair estimate of the percentage of disability to perform duties to which he has been assigned, because of his physical *224 condition, would be from 35% to 40%.”' The Physical Evaluation Board diagnosed plaintiff’s condition as osteoarthritis, degenerative, with X-ray confirmation of swelling, limitation of motion and muscle spasm, multiple joints involvement, and found that plaintiff was unfit and that such unfitness was 40 per cent disabling and of a permanent nature.[2]
On October 25, 1954, the Amy Physical Review Council disapproved the findings of the Physical Evaluation Board and substituted a new finding that plaintiff was considered physically fit on the basis that “The evidence of record does not reveal the presence of any disability to a degree which would preclude the performance of active military duty.”
On November 4, 1954, plaintiff submitted a rebuttal to the findings of the Physical Review Council, including therein an extensive report of a private orthopedic specialist relative to his examination of plaintiff. This report substantially confirmed the diagnosis of the Great Lakes’ Hospital and concluded that plaintiff had moderate osteoarthritis of the cervical and dorsal spine; minimal arthritis of the lumbar spine; and moderate arthritis of both knees. The matter was then referred to the Army Physical Disability Appeal Board, which, on November 12, 1954, concurred in the finding of the Army Physical Review Council that plaintiff was fit for active military duty. This action was subsequently approved by the Secretary of the Army and plaintiff was relieved from active duty on December 11, 1954, not by reason of physical disability, and assigned to a reserve unit.
After his release from active duty, plaintiff filed a claim with the Veterans Administration for disability compensation. The claim was allowed and he received disability payments based on a 40 percent disability rating, with a diagnosis of osteoarthritic joint disease involving the cervical and lumbar spine, and arthritis of the right knee.[3]
*225 Also after bis release from active duty, plaintiff returned to bis former civilian occupation as a letter carrier witb the Post Office Department in Springfield, Illinois. While on that job, he was able to perform his duties in excellent fashion and, in fact, received a commendation from the Postmaster in 1956 for his outstanding performance in having served his route in exceptional time. In March 1958 plaintiff was retired from the Post Office for physical disability, the nature of which is not disclosed by the record.[4]
On June 30, 1955, plaintiff applied to the Army Board for Correction of Military Records for correction to reflect retirement for physical disability. Pursuant to the request of the Correction Board, the Surgeon General submitted the following opinion to the Board:
‡ ‡ $
2. The records substantiate that this officer has osteoarthritis of moderate degree involving the cervical, dorsal spine, and knees, bilaterally; minimal of lumbar spine. The records indicate that the arthritis caused minimal interference with the motion of the joints involved and indicate further that the ineffectiveness resulting from occasional exacerbations while in the service were not of a degree sufficient to materially affect the performance of duty.
3. While the records substantiate that this officer did have some physical defects at the time of his separation from the service, it is believed that the records substantiate the opinion that had not this officer been separated for other reasons, his physical defects were not of such degree as would have precluded further military service.
4. The opinion is rendered, based upon the evidence' of record, that at the time this officer was separated from the service he did not have physical defects of such nature or degree as would have warranted his retirement because of physical disability under the rules, regulations, laws, or policies then in effect.
In March 1956 the Correction Board, without a hearing, determined that insufficient evidence had been presented to *226 indicate probable material error or injustice and denied! plaintiff’s application for a review of his records.
On the basis of these facts, it cannot be found that the Secretary of the Army’s determination that plaintiff, at the time of his release from active duty in December 1954,, was fit for military service, was arbitrary or capricious or unsupported by substantial evidence.[5] While it is without dispute that plaintiff had moderate osteoarthritis of the knees and of the upper and lower spine, there is substantial evidence to support the conclusion that these defects were not of a degree sufficient to incapacitate him for further military duties commensurate with his age, grade and rank. For one thing, the evidence shows that save for a 26-day period of hospitalization, plaintiff, during his last tour of duty in Korea and Japan, was able to perform satisfactorily all his assignments, including those that required physical exertion. Thus it appears that his performance of duty was such that he could be reasonably considered to have been fit for military duty when released. Nor is it without significance that upon his release from active duty, plaintiff was able to resume his job as a letter carrier with the Post Office (a job which, of course, required considerable physical activity) and to perform his duties in such a manner that he received a commendation from the Postmaster for outstanding performance.
When plaintiff was released from active duty, he was 55 years of age. “Of course a man (of this age) is by no means as vigorous as a man of 25 or 30. As age advances, a certain amount of arthritis is to be expected, and the Army of course does not call upon a man of this age to do the same things that a younger man would be called upon to do.” McEaddy v. United States, 152 Ct. Cl. 311, 313 (1961). See also Patten v. United States, 161 Ct. Cl. 131, 135 (1963); Gordon v. United States, 162 Ct. Cl. 740 (1963); Johnston v. United States, supra.
*227 Based on the evidence there is room for a reasonable difference of opinion as to the conclusions to be drawn from the substantially undisputed facts as to plaintiff’s phsyical condition, and more particularly as to whether his osteoarthritis had progressed to such a degree as to render him imfit for further military service. This difference of opinion is reflected in the favorable findings of the Disposition Board and the Physical Evaluation Board as contrasted with the adverse findings of the Physical Review Council, the Physical Disability Appeal Board and the Board for Correction of Military Records. But the fact that there is reasonable ground for disagreement with the Secretary’s determination does not mean that the determination was arbitrary or capricious. Nichols v. United States, 158 Ct. Cl. 412, 415 (1962); Hendrick v. United States, 150 Ct. Cl. 437, 445 (1960). For here, in summary, the record establishes that plaintiff had at the time of his release from active service certain ailments which may in large measure have been compatible with his age. In light of this circumstance and the evidence showing the manner of plaintiff’s performance of duty prior to and immediately after his release from active duty, it cannot be found that the Secretary’s determination of fitness for active service lacked rational basis or was unsupported by substantial evidence.
EINDINGS OF FACT
1. Plaintiff is a citizen of the United States and a resident of Springfield, Illinois.
2. Plaintiff was bom on August 18,1899. He first enlisted in the Regular Army on July 26, 1918, and was honorably discharged on February 15, 1919. On January 15, 1928, he enlisted in the Illinois National Guard and was honorably discharged on December 11, 1931. He was federally recognized as a Second Lieutenant, Infantry, Illinois National Guard on January 24, 1932, and on February 25, 1932, was concurrently appointed as a Second Lieutenant, Infantry, Officers’ Reserve Corps. He was federally recognized as First Lieutenant, Infantry, Illinois National Guard on March 19, 1933, and on April 28, 1933, was concurrently ap *228 pointed as a First Lieutenant, Infantry, Officers’ Eeserve Corps. On August 6, 1934, plaintiff accepted an appointment as First Lieutenant, Infantry, National Guard of tbe United States, which terminated his appointment in the Officers’ Eeserve Corps. He was federally recognized as a Captain, Infantry, Illinois National Guard on October 28, 1938, and appointed on December 5, 1938, as a Captain, Infantry, National Guard of the United States.
On March 5, 1941, plaintiff was called to active duty and was promoted to Major, Army of the United States, on February 1, 1942. On August 14, 1947, he accepted an appointment as Lieutenant Colonel, Infantry, Officers’ Eeserve Corps, which appointment terminated his appointments as a Captain, Infantry, in the Illinois National Guard and the National Guard of the United States. He was appointed as a Major, Army of the United States, on June 30,1948; promoted to Lieutenant Colonel, Army of the United States, on September 7, 1950; and appointed Lieutenant Colonel, Infantry, United States Army Eeserve, on November 22, 1952.
Plaintiff was relieved from active duty on December 11, 1954, not by reason of physical disability, and his appointment as Lieutenant Colonel, Army of the United States, terminated at that time. He was transferred to the Eetired Eeserve on January 31,1955, and placed on the Army of the United States Eetired List in the grade of Lieutenant Colonel on September 1, 1959. He is presently a Lieutenant Colonel, Army of the United States, Eetired, and Lieutenant Colonel, Eetired Eeserve.
3» Plaintiff’s active service was as follows:
(a) July 26,1918 to February 15,1919, as an enlisted man.
(b) Four tours of duty as an enlisted man in the period July 28, 1928 to August 13, 1931, totalling 60 days.
(c) Fourteen tours of duty as an officer in the period from August 6,1932 to March 1,1941, totalling 273 days.
(d) Extended active duty as an officer from March 5, 1941 to December 11, 1954.
4. (a) In 1942 plaintiff was detailed to the Air Force and during the period 1942-45, served as Assistant Director of *229 Training at Sheppard Field, Texas, in which capacity he conducted the physical training, program, among other things. About 1944 he injured his left kuee playing volley ball. He was told by a medical officer that he should be placed on some restricted duty; however, he continued his physical training activities. When the knee became particularly troublesome, plaintiff used elastic bandages and took physiotherapy treatments. The left knee continued to bother him intermittently from that time on with pain and swelling.
(b) In the summer of 1945, while picking up a footlocker, plaintiff felt a pain in the lower part of his back. On his arrival at Fort Bliss several days later, he reported to the station dispensary because of his continuing back pain and was treated with a procaine injection which gave him relief. At that time he was disabled about one week. Plaintiff had four recurrences of the low back pain in the period from 1949 to 1952. Each of these attacks lasted about 10 days and usually occurred when plaintiff twisted his back or lifted objects. On one of these occasions, he was treated at the Veterans Administration Hospital in Jackson, Mississippi ; on the other three instances, he was treated by local doctors. Treatment consisted of local heat to the back and rest in bed.
(c) Around 1948 plaintiff’s right knee began to ache at times although apparently to a lesser degree than his left knee. Plaintiff has not been bothered by swelling in the right knee.
(d) Beginning around 1952 plaintiff had episodes of blacking out; he also suffered recurrent pains in his upper back and neck. These pains occurred once or twice a week and usually started in the morning and subsided in the afternoon. Heat treatments and aspirin served to alleviate the pain to some extent.
5. (a) At the beginning of 1953 plaintiff was stationed in Korea, serving first as a staff officer, administrative, with the 8th Army and later as a Supply Expeditor with the United Nations Command. In this latter assignment, it was necessary for him to travel throughout South Korea by jeep, train and plane. In January 1953, while in Pusan, *230 Korea, plaintiff’s left knee became very painful. The knee was swollen and its motion restricted. Plaintiff went to the hospital in Pusan for relief of the pain. Because of his knee condition, he was given a profile III.
(b) Plaintiff remained in Korea until April 1953, during which time he obtained treatment about two or three times a week for his knee.
6. In the latter part of April 1953, plaintiff was transferred to Japan. He served with Military Government for several weeks, then was assigned to the Camp Schimmelpfennig Regional Camp Command which had control of all camps in northern Japan. While with that command he served as Regional Command Executive Officer, Deputy Regional Commander, Camp Commander of Camp Matshushima (one of the camps in the Regional Command) and Post Inspector at Camp Schimmelpfennig.
7. On May 25, 1953, plaintiff filed a “Request for Renewal of Category Statement”, i.e., an application for continuance of his active duty for an additional three years beyond June 30, 1954, when his current tour was about to end. This request was denied by the Secretary of the Army on November 4, 1954. No reason was given for the denial, but it was commonly understood that officers overage in grade (as was plaintiff who had attained the age of 54 in August 1953) would not be extended.
8. Also in November 1953 plaintiff had a recurrence of acute low back pain. The post surgeon recommended hospitalization but plaintiff, who was then a Camp Commander, did not feel that he should absent himself from his duties. For this reason, after a few days’ rest in bed, he was back on the job.
9. Plaintiff’s duties as a Post Inspector, which he assumed about December 1953, required him to do a considerable amount of walking and travelling about. During this period he was frequently troubled by pain in his knees, particularly the left, and by pain in his low back.
10. (a) In March 1954 plaintiff had a particularly severe recurrence of low back pain and was hospitalized for about one month in the Army Hospital at Sendai, Japan, where he was given heat treatments and confined to a bed which had *231 a bed board installed therein. While in the hospital, he injured his elbow trying to shift his weight in bed. The doctors did not operate on the elbow, believing that it might “clear up” ultimately; however, the elbow condition still causes plaintiff a considerable amount of pain.
(b) The Sendai Hospital’s diagnosis of plaintiff on discharge was:
(1) Osteoarthritis, spine, both knees, right elbow;
(2) Osteoma,[6] right elbow;
(3) Myositis,[7] lumbosacral spine, chronic.
11. During April and May 1954, plaintiff was stationed at Camp Drake, Tokyo, awaiting shipment back to the United States for retirement processing. While at this installation he received heat treatments for his back.
12. (a) On plaintiff’s efficiency report for the period from January 10, 1953 to April 27, 1953, the rating officer noted in part that plaintiff “is mentally and physically qualified”. The endorsing officer made the following comment on this efficiency report:
Subject officer is mentally alert, in excellent physical condition, and is exemplary in his habits.
(b) On plaintiff’s efficiency report for the period May 22, 1953 to December 17, 1953, the rating officer checked the “Yes” box in response to the question “Does this officer possess the physical, mental, and moral qualities expected for his grade, branch, and length of commissioned service?” The rating officer also commented that he was “in good physical condition.”
The endorsing officer added the following comment:
No mental, moral or physical defects noted * * *
(c) On plaintiff’s efficiency reports for the periods December 18, 1953 to February 11, 1954, and February 12, 1954 to April 25, 1954, the rating officer checked the “Yes” box in response to the question “Does this officer possess the physical, mental, and moral qualities expected for his grade, branch, and length of commissioned service ?”
*232 (d) On the latter efficiency report (for tbe period from February 12,1954 to April 25,1954), the rating officer added the following comment:
He (plaintiff) was hospitalized for 26 days during the period of this report, suffering from physical difficulties with his back and knee which handicap him in the performance of duties expected of an officer of his rank.
(e) The rating officer for plaintiff’s efficiency reports covering the periods May 22, 1953 to December 11, 1953 and February 12, 1954 to April 25, 1954, was Colonel Niels I. Poulsen, Commanding Officer, Camp Schimmelpfennig, Regional Camp Command. Colonel Poulsen was the endorsing officer on plaintiff’s efficiency report covering the period from December 18, 1953 to February 11, 1954.
(f) The efficiency reports covering the period January 10,1953 to April 25,1954 reflect that plaintiff performed his duties conscientiously, thoroughly and in a most satisfactory manner.
13. (a) Plaintiff returned to the United States in May 1954 and on June 22, 1954 was admitted to the United States Naval Hospital, Great Lakes, Illinois, for physical evaluation preliminary to his release from active duty. A Disposition Board at the hospital on August 12, 1954, noted that plaintiff’s admission diagnosis was arteriosclerosis, owing to the fact that he had experienced a blackout prior to entering the hospital. The Board also noted that it was later determined at the hospital, however, that the blackouts were of an orthopedic nature, related to an arthritic condition in plaintiff’s cervical spine.
(b) On August 12, 1954, the Disposition Board at the Great Lakes Hospital reported as to plaintiff’s physical condition. This report may be summarized as follows:
(1). Lower Back. Slight lumbar scoliosis; hips level; hips show a full range of motion in all directions without pain; good range of forward bending with perhaps 10 degree limitation; moderate osteoarthritis dorsal spine; minimal osteoarthritis lumbosacral spine.
(2) Upper Back and Neck. Full range of flexion, extension, right and left rotation and lateral bending of the neck; moderate osteoarthritis cervical spine. (At the time of the examination, plaintiff complained of *233 pain and stiffness when turning his head to the right.)
(3) Left Knee. Limitation of flexion, with flexion going to. 75 degrees; knee painful; plaintiff unable to squat; slight effusion (escape of fluid) ; audible crunching and crepitation (grating or crackling sensation) of the patella (kneecap) when the knee was flexed or extended; full extension of the knee; ligaments intact and strong; fullness of the popliteal space (space at back of knee joint); faint rounded calcified densities in the region of the posterior compartment in all likelihood representing loose bodies within the joints; osteo-chondromatosis (multiple tumors composed of bone and cartilage) of the left knee with marked osteoarthritis.
(4) Bight Knee. Limitation of flexion, with flexion going to 60 degrees; crepitation, but less than in left knee; full extension; ligaments intact and strong; fullness of the popliteal space; marked osteoarthritis. (At the time of the examination, plaintiff stated that his right knee didn’t bother him.)
(5). Bight Elbow. Prominent olecranon (bony prominence) on both elbows; right olecranon painful upon palpitation but no motion of the bone could be elicited; elbows showed a full range of flexation and extension and a full range of pronation and supination.
14. The Disposition Board at the Great Lakes Hospital diagnosed plaintiff’s condition as degenerative joint disease, multiple, due to unknown cause. (In non-technical terms, the Board described the disability as “Pain in joints”). It found the disease originated approximately in 1945; that plaintiff was incapacitated for military duty on June 22, 1954; and that the cause of incapacity was incident to service. The Board further noted that the disability was permanent and recommended that plaintiff appear before a Physical Evaluation Board.
15. (a) After further observation and treatment at the Great Lakes Hospital, plaintiff appeared before a Physical Evaluation Board at Fort Sheridan, Illinois, on October 19, 1954. In addition to the report of the Disposition Board, the Physical Evaluation Board considered plaintiff’s testimony that his joint disease rendered him unable to perform his duties a substantial part of the time and his further testimony that as a result of exercises his back no longer bothered him. It also considered a sworn written statement, dated *234 April 17, 1954, from Colonel Niels I. Poulsen, plaintiff’s former commanding officer at Camp Schimmelpfennig. This statement read as follows:
This is to certify that Lt. Col. Gilbert P. Snell (Inf.) 0-293940 has been a member of my command from May 1953 until the present date.
In reviewing Col. Snell’s records at the time he reported for duty, it was evident that he had a physical handicap sufficient to classify him as Profile III, with specific reference to a handicapped knee. His profile statement revealed a swollen left knee which condition was stated as restricting him to duty which did not require prolonged marching or standing. This restriction has been carefully considered during his assignment to my command and every effort has been made to assign him to duties that would not aggravate his condition.
Colonel Snell is 54 years of age, big, strong and robust, and appears to be without physical defect, but it soon became apparent to me that whenever he was on assignments making detailed inspections of areas and troops which required his being on his feet and doing considerable walking, he showed an increased lameness and impaired locomotion in his movements. His duties during assignment to this headquarters have been varied, including Regional Command Executive Officer, Deputy Regional Commander, Camp Commander of a camp, Regional Inspector, all of which are of a nature requiring considerable inspection work which must be accomplished on walking tours involving at times the major part of a day. I recall on several occasions Colonel Snell has expressed having considerable pain in his knees and back at which times I directed that he take it a little easier in an effort to be considerate of his condition.
Several months after his arrival, it became evident to me he was having difficulty and upon inquiry I learned he had injured his back while stationed at Sheppard Field, Texas, seven or eight years ago and has had several recurrences subsequent to that time. His condition, from his explanation to me, is apparently a recurrence and the aggravation of the old injury.
Colonel Snell’s duties have involved close association with me and during the past winter greater difficulty was evidenced. I again recommended that he enter the hospital and have consideration given to his condition. Colonel Snell has been reluctant to leave his duties but *235 finally, during the past month, of March., he entered the hospital where he was given observation and treatment for the greater part of a month and is still, though back on the job, returning daily to the hospital for treatment.
Because of his condition, Colonel Snell_has the appearance of a man older than he actually is because of his disability which affects his movements, gait and ability to function in military activities, the greater part of which require an individual to be capable of getting up and around actively.
The purpose of this statement is to set forth my knowledge of conditions that are evident to me and are a definite handicap to Colonel Snell in the performance of lfis duties and other activities requiring physical mobility. It is plainly evident that any future undertaking Colonel Snell may be interested in, either in or out of the military service, will necessarily have to be restricted because of his inability to perform duties or activities that will require much use of his legs. The back condition has given him considerable difficulty in the past four months particularly and, at his age, it is plainly a considerable physical handicap. A fair estimate of the percentage of disability to perform duties to which he has been assigned, because of his physical condition, would be from 35% to 45%.
(b) As set forth in findings 12(b), 12(d), and 12(e), Colonel Poulsen was the rating officer on plaintiff’s efficiency reports covering the periods May 22, 1953 to December 17, 1953 and February 12, 1954 to April 25, 1954. In the first of these reports Colonel Poulsen indicated that plaintiff possessed the physical qualities expected of Ms grade, branch, and length of commissioned service, and also commented that plaintiff was “In good physical condition”. On the second efficiency report covering the period February 12, 1954 to April 25,1954, Colonel Poulsen again indicated that plaintiff possessed the physical qualities expected of his grade, branch and length of commissioned service. However, he added the comment that plaintiff “was hospitalized for 26 days during the period of tMs report, suffering from physical difficulties with his back and knee which handicap him in the performance of duties expected of an officer of his rank.” See finding 12(d).
16. The Physical Evaluation Board concluded that plaintiff was suffering from arthritis, degenerative, with X-ray *236 confirmation of swelling, limitation of motion and muscle spasm, multiple joints involvement, YA Code No. 5003. The Board further concluded that plaintiff’s disability had originated in 1945; was incurred in time of war or national emergency; was not the result of intentional misconduct or willful neglect; was not incurred during a period of unauthorized absence; was the proximate result of the performance of duty and incurred in the line of duty; that he became unfit for further military service on June 22, 1954; that the disability was permanent and was rated at 40 percent.
17. Code No. 5003 of the Veterans Administration Sched-d/ale for Bating Disabilities (1945), as amended by Extension 7 (July 6, 1950), reads in part:
Arthritis, hypertrophic, degenerative arthritis, or osteo-arthritis.
A substantiated degenerative arthritis, as distinguished from localized hyperostosis and other changes about the joint due to direct or intermittent trauma, congenital deformities, supernumeraiy parts, etc., or postural deformities, shall receive a minimum rating of 10%, or, if there is a satisfactory history of exacer-bations from time to time, 20%. The following ratings are therefore authorized:
With X-ray evidence of involvement of two or more major joints, or two or more minor joint groups, with occasional incapacitating exacerba-tions — 20%
With X-ray evidence of involvement of two or more major joints or two or more minor joint groups — 10%
Note. — The 20% and 10% ratings above will not be utilized in rating other diseases of bones, joints, and muscle, rated by analogy. Other ratings will be authorized in the range 10% to 100% based on the extent of involvement, assuming minimum 10% for each major joint or group of minor joints presenting X-ray confirmation of the disease and also swelling, limitation of motion or muscle spasm or other evidence of painful motion.
18. On October 20, 1954, the record of the proceedings of the Physical Evaluation Board was forwarded to the Army Physical Review Council for review. An attached state *237 ment indicated that plaintiff did not desire to file a rebuttal to the findings of the Physical Evaluation Board. On October 25, 1954, the Physical Review Council disapproved the finding of the Physical Evaluation Board that plaintiff was unfit for duty. The Review Council stated:
The evidence of record does not reveal the presence of any disability of a degree which would preclude the performance of active military duty. Member is considered to be physically fit.
Plaintiff was informed of this action by a communication dated October 26, 1954, and advised that he might file a rebuttal prior to final action being taken on his case.
19. On or about November 4,1954, plaintiff filed a rebuttal to the findings and decision of the Physical Review Council which read in pertinent part:
1. The evidence. in this matter consists of X-rays, physical examination records, and my own statements and those of other witnesses, which are a matter of record, all of which show that I am disabled from performing my. military duties. There is no written word in the basic communication, spoken word, X-rays, or examination, which in any way controverts the findings and evidence of the Physical Evaluation Board.
2. The finding of the Army Physical Review Council is not only contrary to all of the evidence and exhibits in this matter, but seems to be an arbitrary decision not based upon any material or competent evidence. I would like to invite the Council’s attention to the letter dated 17 April 1954 signed by Colonel Niels I. Poulsen which is attached to the Physical Evaluation Board proceedings as Exhibit G. This letter from the Commanding Officer at my last duty station clearly indicates that I am unfit to perform the duties of a Lieutenant Colonel of the Infantry.
8. I herewith submit a written statement of Dr. Duane A. Willander, 203 W. Carpenter Street, Springfield, Illinois, dated November 2,1954, together with a statement of his education, training, and qualifications, of a private examination that I had made on November 2,1954, at my own expense, in support of my contentions. Said documents are attached hereto and are by reference made a part of this, my rebuttal statement. Dr. Willander’s report, Inclosure No. 2, is based upon X-rays taken at *238 Memorial Hospital, Springfield, Illinois. _ Said X-rays are the property of the Hospital and are in its possession. However, this rebuttal statement over my signature will authorize any medical officer, or their agent, of the Armed Forces of the United States to examine said X-rays at any time. Attached hereto and by reference made a part of this rebuttal statement are the findings of Dr. Edward E. King, Khentenologist at Memorial Hospital, Springfield, Illinois, interpreting said X-ray films (Inclosure No. 3.)
4. It is my contention that this is easily verified at the present time by a swelling that now exists in my left knee joint and leg muscles and the atrophy which is present, all of which is due to less than normal amount of walking and activity, and which would be much greater if I were required to walk, or use my legs in normal active duties. All of this is borne out by Dr. Willander’s report and it is certain will be further borne out by any other type of examination that may be conducted.
20. (a) The statement of Dr. Willander, an orthopedic specialist, which plaintiff submitted in rebuttal, contained the results of a physical examination he had given plaintiff. Dr. Willander’s findings as to the plaintiff’s physical condition were, in summary, as follows:
(1) Lower Baoh. Dorsal and lumbar curves normal; on palpitation no tenderness over spine; on forward flexion fingertips came within one inch of the floor; no evidence of lumbar paravertebral muscle spasm with forward flexion; right and left lateral flexion, normal; right and left lateral turnings, 80 percent of normal; moderate osteoarthritis, dorsal spine; minimal osteoarthritis, lumbar spine.
(2) upper Baeh and, Neeh. Extension and flexion of the neck, normal; right and left lateral cervical bend-ings, 80 percent of normal; left cervical turning, 80 percent of normal; right cervical turning, 70 percent of normal; moderate osteoarthritis, cervical spine.
(3) Left Knee. No noticeable limp; patello femoral crepitation; skin over knee more lax than over right knee; audible and palpable crepitation with extension and flexation; cruciate and collateral ligaments stable; no excess of fluid in knee joint; some apparent thickening of knee and some apparent atrophy (wasting) of the left thigh and calf presumed secondary to repeated episodes of swelling and disability in the left knee; moderate osteoarthritis.
*239 (4) Bight Knee. Patello — femoral crepitation, less than left; audible and palpable crepitation with extension and flexion, less than left; moderate osteoarthritis.
(5) Bight Elbow. Osteophyte (bony growth) formation on right olecranon process.
(b) Dr. Willander’s report stated that plaintiff’s history, the physical findings and the X-ray findings would be compatible with a diagnosis of:
1. Osteoarthritis, moderate, cervical spine.
2. Osteoarthritis, moderate, dorsal spine.
3. Osteoarthritis, moderate, both knees.
4. Osteoarthritis, minimal, lumbar spine with possible early degeneration of the L5 Si intervertebral disc.
5. Osteophyte formation olecranon process, right elbow.
21. On November 10,1954, the proceedings of the Physical Evaluation Board, the Army Physical Eeview Council, together with plaintiff’s rebuttal, were referred for review to the Army Physical Disability Appeal Board. On November 12,1954, that Board concurred in the findings of the Physical Eeview Council that plaintiff was fit for active military service. This action was approved by the Secretary of the Army on November 15,1954, and a communication advising of this action was sent to plaintiff’s commanding officer with the request that he send a copy to plaintiff.
22. On December 11, 1954, plaintiff was relieved from active duty not by reason of physical disability and assigned to a Eeserve Unit, his Eeserve commission remaining in effect. On August 31, 1959, having attained the age of 60, he was retired pursuant to the provisions of 10 U.S.C. §§ 1331 and 1337 and was paid at the rate of $296.28 per month from September 1, 1959.
23. After his release from active duty, plaintiff resumed his former civilian employment as a letter carrier with the Post Office Department in Springfield, Illinois, effective February 1, 1955. His route consisted of a single block in the business section of Springfield, but was the heaviest route in town as regards the number of pieces of mail that-had to be delivered. It was not necessary for him to carry a mail satchel since he was furnished by the Post Office *240 Department a three-wheeled nonmotorized cart in which the satchel was placed. Such carts are now in fairly common use. One of plaintiff’s duties was to sort the mail for his route each morning. On occasion, during the performance of this task, he felt a “blackout” spell coming on and he had to sit down or lie down for 10 to 20 minutes before resuming work. On occasion, when he felt one of these spells coming on, he obtained a substitute to take over his route for the day. He never “blacked out” at work. Plaintiff’s knees bothered him quite a bit at night after work, but did not particularly interfere with his duties. From time to time plaintiff was obliged to take sick leave. This was necessitated on several occasions because of injuries sustained on the job. On June 12, 1956, plaintiff received a letter from the Postmaster stating that during specified periods in October 1955 and March 1956 he had serviced his route in exceptional time. The letter commended plaintiff “very highly” on his “outstanding performance”. Plaintiff was retired from the Post Office Department effective March 25, 1958, for physical disability, the nature of which is not disclosed by the record.
24. (a) Shortly after his release from active duty, plaintiff made a claim with the Veterans Administration for disability compensation. The Veterans Administration rated plaintiff 40 percent disabled from December 12, 1954, with a diagnosis of:
5003 Osteoarthritic joint disease, involving spine, cervical, lumbar spine with tenderness L-4 and L-5, and arthritis, right knee, occiptal neuritis secondary to spondyl-arthrosis
(b) In subsequent ratings and examinations the diagnosis has been substantially the same and the ratings have varied from 40 percent to 50 percent, his last rating being 50 percent from August 23,1957.
25. On June 30,1955, plaintiff applied to the Army Board for Correction of Military Eecords for correction to reflect retirement for physical disability. In his application he requested that the Board consider the findings of the Physical Evaluation Board with supporting statements, his rebuttal to the findings of the Physical Eeview Council and *241 any other pertinent evidence in his military file. He also authorized consideration of the findings of the Veterans Administration on his disability claim.
26. Pursuant to the request of the Correction Board, the Surgeon General on February 20,1956, submitted the following opinion to the Board:
1. The records in the case of Gilbert P. Snell, 0293940, have been carefully reviewed.
2. The records substantiate that this officer has osteoarthritis of moderate degree involving the cervical, dorsal spine, and knees, bilaterally; minimal of lumbar spine. The records indicate that the arthritis caused minimal interference with the motion of the joints involved and indicate further that the ineffectiveness resulting from occasional exacerbations while in the service were not of a degree sufficient to materially affect the performance of duty.
3. While the records substantiate that this officer did have some physical defects at the time of his separation from the service, it is believed that the records substantiate the opinion that had not this officer been separated for other reasons, his physical defects were not of such degree as would have precluded further military service.
4. The opinion is rendered, based upon the evidence of record, that at the time this officer was separated from the service he did not have physical defects of such nature or degree as would have warranted his retirement because of physical disability under the rules, regulations, laws, or policies then in effect.
27. (a) On March 21,1956, plaintiff was advised that the Army Board for Correction of Military Records had, on March 7,1956, determined that insufficient evidence had been presented to indicate probable material error or injustice, and accordingly had denied the application for review.
(b) Plaintiff was not afforded an opportunity to appear before the Correction Board.
28. (a) The record establishes that at the time of his release from active duty plaintiff was suffering from moderate osteoarthritis of the cervical and dorsal spine; minimal osteoarthritis of the lumbar spine; and moderate osteoarthritis ■of both knees.
*242 (b) Considering plaintiff’s age, grade and length of service, there is room for reasonable difference of opinion as to whether plaintiff’s physical defects were of such degree as to render him unfit for further military service. This is reflected in the conclusion of the Disposition Board and the Physical Evaluation Board, on the one hand, that plaintiff was unfit for further military service, whereas the Army Physical Beview Council, the Army Physical Disability Appeal Board and the Army Board for Correction of Military Records concluded that plaintiff’s defects were not of such degree as to preclude further military service.
(c) On the basis of the complete record before this court, it cannot be found that the action of the Army Physical Review Council, the Army Physical Disability Appeal Board and the Army Board for Correction of Military Records was arbitrary or capricious or not supported by substantial evidence.
CONCLUSION OJ? LAW
On the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is dismissed.

 This section provides in part that “üpon a determination by the Secretary of the Army) * * * (1) that a member of a Reserve component * * * entitled to receive basic pay * * * who has been called or ordered to extended active duty * * * in excess of thirty days, is unfit to perform the duties of his office, rant, grade, or rating, by reason of physical disability incurred ■while entitled to receive basic pay; (2) that such disability is not due to the intentional misconduct or willful neglect of such member and that such disability was not incurred during a period of unauthorized absence of such member; (3) that such disability is 30 per centum or more in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration; (4) that such member has completed at least eight years of active service » » *; and (5) that accepted medical principles Indicate that such disability may be of a permanent nature * * * such members shall be entitled to receive disability retirement pay.”

 Osteoarthritis of the type plaintiff was suffering from is a progressive disease typically occurring after the age of 45. See Veterans Administration, Schedule for Bating Physical Disabilities (1945), p. 22.

 This determination by the Veterans Administration is, of course, not dis-positive of plaintiff’s fitness or unfitness for military duty. See e.g., Holliday v. United States, 128 Ct. Cl. 647, 649 (1954) ; Uhley v. United States, 137 Ct. Cl. 275, 281-82, 147 F. Supp. 497, 501 (1957) ; Patten v. United States, 161 Ct. Cl. 131, 135 (1963).

 “The fact that plaintiff’s condition may have deteriorated subsequent to his release from (active military) service is not of itself determinative of the issue before (this court) * * *” That issue is whether the Secretary’s decision as to plaintiff’s fitness for duty at the time of his release from active service was arbitrary or capricious. Johnston v. United States, 157 Ct. Cl. 474, 478 (1962).

 The statute charges the Secretary with responsibility for making the determination as to who is fit or unfit for military service and, accordingly, this court has held time and again that it would not disturb that determination unless it was arbitrary or capricious or unsupported by substantial evidence. See e.g. Thompson v. United States, 156 Ct. Cl. 158, 161-62 (1962), and cases cited; Johnston v. United States, supra, and cases cited; Furlong v. United States, 153 Ct. Cl. 557, 563 (1961), and cases cited.

 An osteoma is a tumor composed of bone tissue. See Dorlands Illustrated Medical Dictionary (23d ed.) 1957.

 Myositis is the inflammation of a voluntary muscle. Ibid.