Allan P. BOSCH, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 771–87C.

United States Court of Federal Claims.

Dec. 3, 1992.

Kenneth M. Carpenter, Topeka, Kan., Atty. of Record, for plaintiff.

James M. Kinsella, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C., with whom were David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., Attys. of Record, for defendant.

## OPINION

HORN, Judge.

This case is before the court on defendant's motion for summary judgment and the plaintiff's cross-motion for summary judgment. Jurisdiction apparently is uncontested under 28 U.S.C. §§ 1346(a)(2), 1491 (1988).[1] Plaintiff seeks review of a 1987 Board for Correction of Naval Records (BCNR) decision, which awarded plaintiff a 10 percent service-connected disability rating and granted severance pay pursuant to 10 U.S.C. § 1201 (1976). Plaintiff alleges that the decision was "arbitrary, capricious and unlawful, as well as unsupported by substantial evidence, contrary to law, regulation and mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced and money is due." Plaintiff seeks a judgment awarding him "a correction of military status under the provisions of 10 U.S.C. 1552, *et seq.,* as amended, for the period from the date of the plaintiff's discharge from the United States Navy to the present." Defendant contends that the BCNR's rating decision was proper and that the plaintiff is not entitled to the relief requested.

After a complete review of the record in the case, including the voluminous, completely disorganized, and badly reproduced administrative record, as well as the filings before this court, and after hearing oral argument, this court finds that the BCNR fully reviewed and considered the plaintiff's record and that its decision was neither arbitrary nor capricious. Therefore,

---

1. Plaintiff's claim cites to jurisdiction under 28 U.S.C. § 491, which, presumably, was a typographical error.

defendant's motion for summary judgment is GRANTED and plaintiff's cross-motion is DENIED.

## FACTS

Plaintiff, Allan P. Bosch, served in the Navy from June 16, 1971 to June 3, 1975, when he was honorably discharged.[2] Plaintiff reenlisted in the Navy on May 30, 1980, and served for approximately one year on a submarine, the U.S.S. Polk, without incident. At plaintiff's request, he was transferred to Admiral's Writers School, which trains personal secretaries for flag rank officers. While on annual leave from the U.S.S. Polk, but before transferring to the School, plaintiff's father died suddenly. Plaintiff then returned from leave and completed another 70–day patrol on the U.S.S. Polk, apparently without incident. Six weeks prior to his assignment to the School, plaintiff reported to NAVTECTRA-CEN where he was assigned various office duties, and where he was described as performing "exceedingly well". When plaintiff reported to the School on August 31, 1981, he began to exhibit difficulty in coping with military life and was "disenrolled" after only two days of instruction because of a "lack of motivation." At that time, however, it was also noted in his record that plaintiff would "make a contribution to any office that he may be assigned." Plaintiff was then transferred to Submarine Group Five (COMSUBGRU FIVE) in San Diego, following which he began to suffer from anxiety, depression and fear, which apparently centered on his perception that his reenlistment had been a mistake, and apparently manifested itself by his fear of putting on a military uniform.

Plaintiff was referred to the Mental Health Unit at Naval Training Center, San Diego, for treatment. There, on October 19 and 29, 1981, plaintiff was examined by Dr. Combalecer, who diagnosed him as suffering a borderline personality disorder and recommended plaintiff's administrative separation for medical reasons. Dr. Combalecer noted that Mr. Bosch "had just found out that he didn't belong in the military basically because of personality incompatibilities on his part. He's a loner and he finds it difficult to survive in the military." Dr. Combalecer also noted that Mr. Bosch's adjustment to military life, since reenlistment, had been "sporadic and mostly full of confusion, ambivalence and lately anxiety and depression." After administrative proceedings, plaintiff was honorably discharged on December 16, 1981, on the grounds of "UNSUITABILITY–PERSONALITY DISORDERS."[3]

Plaintiff applied to the Veterans Administration (VA), by letter dated January 31, 1982, requesting a "compensable service-connected disability" for both a borderline personality disorder and a hearing loss. A letter dated March 31, 1982 from the VA awarded plaintiff a $58.00/month benefit, retroactive to December 17, 1981. No explanation was given in the decision or notification documents included in the record to substantiate this award. The only attachment to the March 31, 1982 letter, however, specifically dispels the notion that plaintiff suffered a compensable hearing loss while in the service, and describes plaintiff's hearing as "within normal limits."

---

**2.** The court notes that the dates of plaintiff's service reflected in the administrative record are different than those included in the defendant's appendix. However, both plaintiff and defendant use June 16, 1971 to June 3, 1975 as the dates of plaintiff's first tour in the Navy. In fact, plaintiff in his cross motion for summary judgment uses these dates, although he cites to the administrative record as authority. Moreover, in his statement of genuine issues submitted to the court, the plaintiff concurs that June 16, 1971 to June 3, 1975 are the correct dates.

**3.** Under the regulations, a mental disease, such as that at issue in the instant case, can be considered a physical disability for discharge purposes. 32 C.F.R. § 725.228 (1981) states:

> § 725.228 Physical disability
> Any manifest or latent impairment of function due to disease or injury, regardless of the degree, which reduces or precludes an individual's actual or presumed ability to engage in gainful or normal activity. The term "physical disability" includes mental disease, but not such inherent defects as behavior disorders, personality disorders, and primary mental deficiency, although they may make a member unfit for military duty.

On March 11, 1982, plaintiff was examined by Dr. William T. Query, Ph.D., Chief of Psychology Services, North Dakota Veterans Administration Medical Center, Fargo. Dr. Query found that plaintiff was "presently severely depressed" and diagnosed him as suffering from "major depression, recurrent" and a "borderline personality disorder." On March 12, 1982, plaintiff requested that his discharge be changed from "for cause" to service-connected disability, so that he would be eligible for unemployment benefits. On April 23, 1982, the VA issued a rating decision denying plaintiff's request for a finding of "service connection for nervous condition." In this denial, the VA determined that "[t]he evidence of record does not show a ratable psychiatric disability was incurred during service or a psychosis was manifested within the one year presumptive period following his active service. The Veteran's personality disorder is a congenital or developmental defect. The evidence of record does not show the personality disorder was chronically aggravated while on active duty," This rating decision, however, awarded a 10 percent VA benefit to the plaintiff as follows: "SC (PTE INC) Tinnitus, 10% from 12–17–81." Subsequently, plaintiff requested, and on June 30, 1982, the VA denied, another claim by plaintiff for a disability rating adjustment, and upheld the award to plaintiff of only a 10 percent disability for Tinnitus.

On June 23, 1982,[4] plaintiff filed his first request asking the Board of Correction for Naval Records (BCNR) to change his discharge records from "for cause" to a medical discharge so that he could "receive unemployment benefits and seek counseling other than at my own expense." The BCNR referred plaintiff's case to the Navy's Central Physical Evaluation Board (CPEB) for an advisory opinion. (32 C.F.R. § 723.11(a) (1981)). The CPEB responded on August 12, 1982 that:

the service medical records fully support the established diagnosis of personality disorder, a condition not constituting a physical disability. It is the judgment of this Board that the member did not exhibit evidence of any medically unfitting condition upon which to base a recommendation for medical retirement or discharge.

The CPEB, therefore, recommended that the plaintiff's petition for disability benefits be denied. On September 13, 1982, the BCNR wrote to plaintiff denying relief, based on his "application, together with all materials submitted in support thereof, naval records, and pertinent statutes, regulations and policies. Also considered was an advisory opinion ... the rebuttal of your counsel thereto, and rating decisions of the Veterans Administration." The BCNR concluded: "the Board was unable to find that you [plaintiff] were unfit for duty by reason of a physical disability when you were discharged from the naval service, which is a prerequisite for separation with benefits or retirement with pay by reason of physical disability."

Plaintiff submitted a second request to the BCNR, dated November 29, 1983, seeking the same relief as in his earlier request, but to which plaintiff attached additional materials, including plaintiff's denial that he had ever suffered from any personality disorder. Rather, plaintiff claims that he had been suffering from depression due to the death of his father. In this request, plaintiff asked that his discharge for "unsuitability—personality disorder" be changed to one of "convenience of the Government," along with "a suitable separation and reenlistment code so as to allow myself to apply for a Direct Commission in the Navy Medical Service Corps as Health Care Administrator." In his request, plaintiff stated:

I don't have a personality disorder and neurologic/psychiatric testing and examination substantiates this to be true. My

---

4. The application bears a date next to plaintiff's signature of May 25, 1982. However, the application is stamped June 23, 1982 on page two. The latter appears to be the date upon which the BCNR received the application. Even the stamp, however, is unclear as to whether it was May 23 or May 28, 1982. In their filings, however, the parties both seem to agree and use the date June 23, 1982 as the date of the first application to the BCNR.

previous uninterrupted service, my performance evaluations, and my current situation, I sincerely believe, make me a very good candidate to seek a commission as a Naval Officer and Medical Service Corps Health Care Administrator— if my story is listened to with a sincere heart and a clear and concise mind, I feel that my discharge will be upgraded to allow me to go back into the Navy.

The Naval Medical Command, in an advisory opinion dated February 6, 1984, recommended that plaintiff's request be denied because "petitioner's application for correction of records provides no substantive evidence to refute the diagnosis of borderline personality disorder at the time of discharge [December 16, 1981] from the naval service or the medical recommendation for administrative discharge by reason of unsuitability." After numerous extensions, and plaintiff's failure to file a timely rebuttal to the February 6, 1984 advisory opinion, which had been furnished to him, the case was administratively closed by the BCNR without a decision on the merits on May 15, 1986. The plaintiff, however, was also informed that when plaintiff was ready to proceed he should "simply reapply to the Board and the matter will be reopened."

During the period 1984–1986, Mr. Bosch continued to seek relief from the VA. For example, on March 12, 1984, the VA granted him an additional 10 percent service-connected disability for temporomandibular joint dysfunction, but the VA refused Mr. Bosch's request to delete VA medical record entries reflecting a diagnosis of a personality disorder.

In January, 1985, plaintiff was hospitalized at the Minneapolis VA Hospital. In plaintiff's hospital discharge summary, Dr. Smelker, M.D., stated that:

> It was the feeling of our staff that the patient suffered from a primary depressive illness which had been manifested some four years ago and had continued. It seemed that in the ensuing years obsessive compulsive symptomatology has become also prominent to the point of being a disorder at this time.

Based on the medical and psychological reports, plaintiff again asked the VA to grant him service-connected disability as of his December 16, 1981 discharge from the Navy. On July 25, 1985,[5] the VA granted plaintiff partial relief, finding that "[i]t has been concluded that your nervous condition was initially manifested in 1981 during your peacetime military service, and an evaluation of 50 percent has been assigned, effective November 29, 1983." [6] Also during 1985, the record shows that plaintiff was evaluated by multiple mental health care practitioners, including Shirley K. Tyler, Ph.D., clinical psychologist at the University of North Dakota Medical Center Rehabilitation Hospital, Dr. R.M. Combalecer (now a civilian doctor) and L.W. Eggers, Ph.D., a psychologist.

On May 14, 1986, plaintiff again applied to the VA for an increase in his disability rating. On June 6, 1986, the VA responded to plaintiff's request stating:

> The veteran has had extensive psychiatric evaluation including review by a VA psychiatrist and the evidence is sufficient to show that the veteran has a major depressive episode with anxiety, paranoid ideation as well as an obsessive compulsive disorder. Under applicable rating criteria, the veteran's ratable psychiatric illness is rated as one disease entity. Based on a longitudinal view of this dis-

---

5. In the administrative record photocopy, and in defendant's appendix, the dates on photocopies of the July 25, 1985 letter are unclear. However, during the oral argument, the parties stipulated that the correct date for this letter should be July 25, 1985.

6. Plaintiff alleges that the 50 percent rating was only effective as of November 29, 1983 because of the provision included in 38 C.F.R. § 3.400. That regulation states:

> Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later (38 U.S.C. 3010(a)).

ability, we conclude it is of such severity so as to produce complete social and industrial inadaptability. Effective date of 100 percent evaluation is from November 29, 1983, as the previous claim has not been finally adjudicated. Service connection was denied for a nervous condition by rating action dated April 23, 1982, as the evidence at that time was consistent with a passive-aggressive personality with depression. The veteran was informed of this decision on April 30, 1982. The veteran did not file a notice of disagreement within the one year prior from that notification. Accordingly, that determination is final and is not subject to revision in absence of clear and unmistakable error. We conclude there is no error in that determination.

No new and material evidence has been submitted to warrant a compensable evaluation for the temporomandibular joint dysfunction prior to September 26, 1983. As a total schedular evaluation has been assigned individual unemployability is not a factor. The veteran is competent to handle his funds. Authorization: Advise veteran of less than substantially all benefits sought on appeal.

| 9206–9204 | 1. SC (PTE INC) MAJOR DEPRESSIVE EPISODE AND OBSESSIVE COMPULSIVE DISORDER, COMPETENT 100% from 11–29–83 |
| 6260 | TINNITUS 10% from 12–17–81 |
| 9905–8100 | TEMPOROMANDIBULAR JOINT DYSFUNCTION 0% from 12–17–81 10% from 9–26–83 |
| 6297 | 8. NSC (VE, PTE) |
| 5299–5257 | HEARING LOSS CHONDROMALACIA OF LEFT PATELLA 10% from 12–17–81 20% from 9–26–83 |
| COMB | SC 100% from 11–29–83 |

On July 14, 1986, plaintiff Bosch wrote to the BCNR requesting that his case be reopened. Then, on September 12, 1986, after plaintiff had asked for the case to be reopened and after plaintiff had submitted to the BCNR the most recent VA decision, which assigned the 100 percent disability to plaintiff, the Naval Medical Command advised the BCNR that:

1.   * * *

2.   The petitioner requests correction of records to change reason for separation from "For Cause" to Medical with Permanent Disability Retirement effective 16 December 1981 for Total Disability. It is his contention that he was totally and permanently disabled due to a psychiatric condition at the time of separation. The petitioner relies upon evidence of record with additional statement and enclosures. Information not previously available to this Command.

*     *     *     *     *     *

4.   It is now the opinion that the petitioner was wrongfully administratively separated. The psychiatric consultation noted in the Naval Record does not substantiate a diagnosis of Borderline Personality Disorder. The criteria for this diagnosis have not been met by the consultation as set forth in the DSM–III Diagnostic Criteria Manual of Mental Disorders. This individual was, in fact, disabled due to a psychiatric condition which should have been treated and if unsuccessful, then referred to a medical board. It is the opinion that although the exact diagnosis is unclear at this time, it would have been one of the following: (a) Depressive Episodes with Anxiety, (b) Anxiety Disorder or (c) Traumatic Stress Disorder. It is evident that the illness became prominent following the sudden death of his father which he witnessed.

5.   Evidence of disability at the time of separation is found in the following: The petitioner had completed a tour of active duty previously without problems; he was highly thought of by his command and suddenly following his fathers [sic] death he became depressed, anxious and fearful of wearing a military uniform.

6.   It is the opinion that the petition is with merit and that the issue of disability

benefits should be addressed by the Disability Evaluation System as a matter under their cognizance.

The Naval Medical Command, however, did not recommend any percentage disability rating.

The Naval CPEB issued its advisory opinion to the BCNR on November 12, 1986, after reviewing the evidence, along with the comments and recommendation of the Naval Medical Command. The CPEB wrote to the BCNR that:

> [i]t is the opinion of the Central Physical Evaluation Board (CPEB) that the petitioner should have consideration for this sudden change prior to his discharge and believes it represented more than just a personality disorder. The CPEB therefore recommends the petitioner be rated ... at 10%. It is the opinion of the CPEB that his condition did not warrant a higher percentage *at the time of his discharge* from active duty. Any change since that time should more appropriately be addressed by the Veterans Administration.

(Emphasis added.) On January 21, 1987, the BCNR provided plaintiff with copies of the Naval Medical Command's September 12, 1986 advisory opinion and of the CPEB's November 12, 1986 advisory opinion. Plaintiff Bosch offered his rebuttal on January 29, 1987.

On April 29, 1987, the BCNR issued its opinion and recommended relief consistent with the Naval Medical Command and the CPEB advisory opinions. In this April, 1987 decision, after reviewing the record, the BCNR indicated:

> g. On 12 November 1986 the Board was advised in enclosure (4) [CPEB letter of November 12, 1986] that a review of the records indicates the member exhibited an underlying difficulty prior to his separation which was exacerbated by a severe reaction to events which occurred just prior to his release. An apparent decompensation occurred subsequent to his discharge. It is the opinion of the Central Evaluation Board (CPEB) that the petitioner should have consideration for this sudden change prior to his dis-

charge and believes it represented more than just a personality disorder. *The CPEB therefore recommends the petitioner's records be corrected to show that he was discharged by reason of physical disability by reason of obsessive compulsive disorder with anxiety feature, rated 10% disabling. His condition at that time did not warrant a higher percentage, and any change since that time should be more appropriately addressed by the Veterans Administration.*

CONCLUSION:

> ... Although the Board finds that Petitioner was unfit by reason of physical disability on 16 December 1981, it is unable to conclude that Petitioner's mental disorder was ratable in excess of 10% disabling under the VA Schedule for Rating Disabilities on that date, or that he suffered from any other ratable condition at that time.

    .    .    .    .    .

(Emphasis added.)

The BCNR, therefore, concluded by awarding plaintiff the following relief:

RECOMMENDATION:

1. That Petitioner's naval record be corrected to show:

A. That he was not discharged on 16 December 1981.

B. That the Secretary of the Navy on 15 December 1981, while Petitioner was entitled to receive basic pay, determined him to be unfit to perform the duties of his rate by reason of physical disability, aggravated while entitled to receive basic pay by reason of obsessive-compulsive disorder with anxiety features, # 3003; that the disability is not due to intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; that the disability was incurred in line of duty after September 14, 1978; that the disability be considered to be ratable at 10% in accordance with the Standard Schedule for Rating Disabilities in use by the Veterans Administration at the time of the determination,

Code Numbers: 9499–9409 .........10%
LESS EPTE....... 0%
10%;

and that accepted medical principles indicate that his disability may be of a permanent nature, and therefore the Secretary of the Navy directed that he be discharged by reason of physical disability with severance pay effective 16 December 1981 pursuant to 10 U.S.Code 1203.

The Secretary of the Navy approved the BCNR's recommendation on May 12, 1987, and modified plaintiff's naval record to reflect discharge due to a 10 percent psychiatric disability and authorizing disability severance pay in the amount of $11,134.80 under 10 U.S.C. § 1203. On May 13, 1991, a letter was sent to plaintiff Bosch informing him as follows:

The Board for Correction of Naval Records recently reviewed allegations of error and injustice in your naval record. The proceedings have been reviewed and the recommendation of the Board has been approved by the Secretary of the Navy as follows:

1. That your naval record be corrected to show:

A. That you were discharged on 16 December 1981.

B. That the Secretary of the Navy on 15 December 1981, determined you unfit by reason of physical disability, ratable at 10%, and therefore the Secretary of the Navy directed that you be discharged by reason of physical disability with severance pay effective 16 December 1981.

By copy of this letter, the Navy Finance Center, Cleveland, Ohio 44199, is authorized to pay all monies lawfully found to be due as a result of the above recommendation.

\*　　\*　　\*　　\*　　\*　　\*

I am pleased to advise you that the appropriate changes will be made in your naval service record by the Commander, Naval Military Personnel Command.

7. Following the enactment of the Court of Federal Claims Technical and Improvement Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992),

Thereafter, plaintiff filed the instant action in the United States Claims Court,[7] alleging that the April 29, 1987 BCNR decision was in error. Subsequently, on September 14, 1988, by agreement of the parties, this matter was stayed, pending plaintiff's petition for yet another reconsideration by the BCNR.

During the time the case in this court was stayed, the plaintiff Bosch was once again given an opportunity to present his case to the BCNR. Prior to making its decision, the Board received additional and new advisory opinions, from a Record Review Panel and from the Naval Physical Review Board. The Record Review Board examined the BCNR file, the service record, and the medical record and concluded that the 10 percent disability rating was appropriate. The panel stated:

This rating was based on the degree of disability present at the time of separation. Any change in the petitioner's condition after separation must be addressed by the Veteran's Administration. There is no new information on which to recommend a change to the original CPEB recommendation.

The Record Review Panel recommends the petition before the BCNR be denied insofar as additional benefits administered by the Department of Navy are concerned.

The Naval Physical Review Board reviewed all the documents relevant to plaintiff's case, including all his applications to the BCNR and to the VA for modifications of his disability rating or other relief. This Board also analyzed the most recent BCNR conclusion that petitioner had been wrongfully administratively separated and that he was disabled due to a psychiatric condition. The Board acknowledged the 10 percent disability rating by the Navy, and noted the number of times plaintiff's case had been reviewed. The Naval Physical Review Board then issued to the BCNR its

the United States Claims Court was renamed the United States Court of Federal Claims.

own very thorough review, analysis and recommendation, as follows:

3. *RECOMMENDATION.* The NPDRB after a review of the records recommends that the member's petition for a disability rating greater than 10% in December 1981 be denied. The Board is of the opinion the records support the service position in 1981 as amended. Furthermore, the official documents are adequate to make this determination.

4. *RATIONALE*

a. The BCNR has previously received advisory opinions from COMNAVMED-COM dated 12 September 1986 and the CPEB DATED 13 November 1986 recommending a correction of records in view of medical evidence supporting physical disability (vice personality disorder) as the basis of discharge from active service in 1981. The current petition to BCNR is requesting disability retirement vice separation in 1981, claiming to have been totally disabled at the time of separation. Various psychiatric and medical opinions from private sources and the VA have been submitted to support the member's petition. The VA after initial denial of a disability rating for a mental disorder subsequently awarded a 100% disability for unemployability from November of 1983.

b. In determining impairment in the industrial sector from a mental disorder, the service Physical Evaluation Boards (PEB's) and the rating Boards of the VA utilize general basic guidelines on disability evaluations as well as disability guidelines that are specific for psychiatric disorders. Paragraphs 125, 126, 129, and 130 of the Veterans Administration Schedule for Rating Disabilities (VASRD) covers psychiatric disorders. Among important determinants of impairment are the mental status examination findings, the frequency, severity, and duration of overt symptomatology of the disorder, and its realistic influence on industrial sector impairment and employability. In rendering decisions, the PEB members are expected to utilize their background, their training, their experience, and their common sense in arriving at a reasonable probability of the truth. *Disparities in ratings by the VA and the service [including the Navy] PEB's are at times explainable by laws and regulations pertaining to the VA and not to the DOD, such as convalescent ratings, time period ratings, hospitalization period ratings, and pre-stabilization ratings. In other instances, ratings are disparate and arrived at by Board members who evaluate and interpret the data differently.* The findings of the service and VA Boards are arrived at independently and are not binding on each other. The member is free to choose the findings of the government department that are most favorable to him/her. *After service discharge, the VA under its laws and regulations, may increase the disability rating of a service incurred/aggravated condition that underwent a significant increase in severity. The service PEB's are, however, without authority to retroactively increase the disability rating in a similar situation where the member has been separated or permanently retired.* In case of material error or injustice, however, the BCNR may recommend to SECNAV a revision of the disability rating at the time of separation or permanent retirement, as was done in this case.

c. In the case before the Board, the records indicate that for approximately three months prior to separation in 1981, the member worked in an office environment full time while awaiting separation processing. For a period of time described by the member as two months at a VA hearing in June 1986 and depicted as at least ten months by statements of 18 November 1983 and August 1984, the member worked as an assistant hospital administrator. At various times the member pursued college courses receiving grades of A and C. In November 1983 the member's petition to BCNR mentioned his improved situation and qualifications pursue a commission as a Naval Officer and a Medical Service Health Care Officer. Also, in November

1983 while working as administration [sic] assistant at Ashley Hospital, the member had a neurological and psychiatric evaluation by Dr. K.N. Murthy showing the member to be without a mental disorder or a personality disorder.

d. During all evaluations, the member has never been found to be mentally incompetent and has had no periods of in-hospital treatment except for an eighteen day period for evaluation and treatment in December 1985 (four years after service separation). Although periods of anxiety and depression existed in service, the symptoms have been considered to have been mild, but sufficient to disqualify him for the stresses of service life. Mental status examinations post-service discharge have detected periods of anxiety, depression and obessive [sic] compulsive symptomatology. For at least two years after service discharge, the reports of psychiatric evaluations, and the member's letters to the VA, the congress, and the BCNR reflect the cognitive function of a bright, lucid, coherent, and goal directed member. At no time did the member suffer from the disorganization of thought and loose associations of a psychotic disorder such as schizophrenia, nor the affective severity of a bipolar disorder, nor the overt and florid manifestations of psychosis such as hallucinations or delusions. The Board is also struck by the minimal use of medications employed to treat the member's symptoms. The NPDRB is of the opinion the objective evidence of mental impairment for the period of active service and for at least two years post-discharge is one of mild degree that would not impair the member for much gainful employment if pursued.

e. The Board notes there are indications from health record entries of 19 October 1981 and 29 October 1981 that the member manifested symptomatology even prior to active service on reenlistment in 1980. Shortly after re-enlisting the member realized he had made the wrong choice about re-enlisting, especially after going through a period of ambivalence and confusion just prior to 1980

whether to pursue seminary studies, law, or philosophy. Considering the history, the Board is of the opinion a 0% or 10% existed prior to enlistment (EPTE) factor could be supported for the pre–1980 period.

f. As to ratings for TMJ disorder and tinnitus, the Board reviewed the objectives impairments recorded and is of the opinion ratings in excess of 0% were not supported in 1981 in that the tinnitus was transient and intermittent, and the TMJ limitations did not impair mastication or speech.

g. The VASRD provides for a 10% rating for anxiety productive of moderate social and industrial impairment under the 9400 VA Codes. A 30% rating is provided for considerable industrial impairment. The Board, after a careful review of the records, can find little in the way of consistent objective documentation of mental impairment that would support disability rating in excess of 10% for neurotic disorders in 1981. The NPDRB and the PEB's that have reviewed the record are not convinced of the VA determinations of total disability beginning in November 1983 (let alone prior to that time frame), for the reasons detailed above. The Board is therefore of the opinion the records support the service determinations in 1981 as modified by SECNAV in 1987.

(Emphasis added.)

Prior to issuance of the BCNR's opinion on the reconsideration, the BCNR offered plaintiff the opportunity to respond to the advisory reports issued by the Record Review Panel and the Naval Physical Disability Review Board. Plaintiff's counsel responded on behalf of his client on July 21, 1989. After review of plaintiff's application, all the voluminous materials submitted by plaintiff, the naval records, the advisory opinions, referenced above, and the applicable statutes, regulations and policies, on September 13, 1989, a three-member panel of the BCNR, sitting in executive session, issued a final decision to plaintiff Bosch. The BCNR concluded:

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 31 August 1989. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinions furnished by the Record Review Panel dated 12 May 1989 and the Naval Physical Disability Review Board (NPDRB) dated 21 June 1989, and your counsel's rebuttal thereto. A copy of each of the advisory opinions is attached. After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. *In this connection, the Board substantially concurred with the comments contained in the advisory opinion.*

The Board was unable to conclude that your mental disorder was ratable above 10 percent disabling at the time of discharge, or that you suffered from any other ratable disabilities at that time. Although you have submitted records prepared by various mental health care professionals who are of the opinion that you have been totally disabled since your discharge, none of those records was made contemporaneously with your discharge or within a reasonable time thereafter, and all appear to be based in part on questionable representations which you made concerning the history of your mental disorder. The majority were made without reference to your naval record, and contain no indication that the disability evaluation standards which are employed by the military departments were considered by the examiners. *As noted by the NPDRB, disability findings of the military departments and the VA are arrived at independently, and the findings of one agency are not binding on the other. It should also be noted that the Department of the Navy employs a centralized rating system in order to ensure the uniform application of disability rating principles, whereas the VA system is decentralized, and ratings may vary significantly among the various VA rating boards.* In your case, it appears that the 100% rating which you were ultimately assigned by officials at a VA regional office is more the produce of your persistence than of a reasonable application of the VA Schedule for Rating Disabilities.

Your alleged inability to seek or maintain gainful employment since your discharge in 1981 is not considered to be probative of your contention that you have been unemployable and totally disabled as a result of a mental disorder which was incurred in or aggravated by your naval service. The Board noted that your civilian employment history prior to your discharge is characterized by a number of relatively brief periods of employment, with substantial periods of unemployment. Although your employment opportunities may have been limited by your frequent changes of residence and your attendance at three different educational institutions during the period between your two enlistments, the fact remains that you did not demonstrate any significant ability to succeed in a civilian work environment prior to your discharge in 1981. The Board also found that you admitted to having had symptoms of a mental disorder prior to your reenlistment in 1980. Among those symptoms were social withdrawal, maladjustment, anxiety, psychologically induced impotence, and religious ideation. Had you disclosed those symptoms when questioned at the time of your reenlistment physical examination, you would have been required to undergo a psychological examination, and it is unlikely that you would have been permitted to reenlist.

In view of the foregoing, your application has been denied. The names and

votes of the members of the panel will be furnished upon request.

(Emphasis added.)

Thereafter, the suspension in this court was lifted. No material facts are in dispute in the action currently pending in this court. Consequently, the instant case can be resolved on the record before the court, by means of summary judgment.

## DISCUSSION

Summary judgment in this court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this Court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[8] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules of this court provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Ass'n, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

■ Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lob-*

by, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury court return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

■ When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

---

**8.** As indicated above, the enactment of Pub.L. No. 102–572, 106 Stat. 4506 (1992), changed the name of the United States Claims Court to the United States Court of Federal Claims. The Rules will be named to conform in the near future.

In general, the Rules of this court are closely patterned upon the Federal Rules of Civil Proce-

dure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the Rules of this court, including Rule 56(c). *See Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If, under no scenario, can the nonmoving party present the evidence necessary to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Under Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Celotex v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

The fact that both parties have moved for partial or full summary judgment, based on the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "Simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). *See also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d at 1391.

In past military disability retirement cases, a sub-category of military pay cases, the Court of Claims has held that the court's review need not be restricted to the record before the administrative body. *Brown v. United States*, 184 Ct.Cl. 501, 396 F.2d 989 (1968); *Beckham v. United States*, 183 Ct.Cl. 628, 392 F.2d 619 (1968). Other cases, however, have tended to limit the practice of allowing *de novo* evidence, especially in non-disability cases. (See discussion in *Long v. United States*, 12 Cl.Ct. 174 (1987).) *See De Cicco v. United States*, 230 Ct.Cl. 224, 677 F.2d 66 (1982). In citing to *Brown*, the court in *De Cicco*, a disability retirement case, stated that a plaintiff is not entitled to a trial *de novo*, but, simply that *de novo* evidence may be allowed if it is new to the case, not merely to the court. *De Cicco*, 230 Ct.Cl. at 229–30, 677 F.2d at 70 (citing *Brown*, 184 Ct.Cl. at 515–16, 396 F.2d at 999). Therefore, if the parties have nothing new to present, they typically must rely on the administrative record. *Id.* Furthermore, if the government believes that a plaintiff has offered no new evidence, and that a *de novo* hearing would be duplicative, it may choose to move for summary judgment based on the record, as it has done in the instant case. *Id.*

As in *De Cicco*, this court need not rule on whether plaintiff should receive a *de novo* trial or whether *de novo* evidence

should be allowed because it appears "[t]he record shows that all of the evidence proffered by the plaintiff ... was considered by the Correction Board before it rendered its decision." *De Cicco*, 230 Ct.Cl. at 230, 677 F.2d at 70.

As noted earlier, in addition to being disorganized and repetitive, the record in plaintiff Bosch's case is voluminous. Moreover, based on the record, it is clear that plaintiff was afforded multiple opportunities to present written materials, including medical evaluations, to the BCNR on four separate occasions. Plaintiff's original application was filed with the BCNR on June 23, 1982. The application was denied by that Board, after review of the submissions and receipt by the BCNR of advisory opinions on plaintiff's psychological condition. Plaintiff's second application was filed on November 29, 1983, but was closed administratively after plaintiff failed to respond to the BCNR's offer to rebut the advisory opinions submitted to the Board, copies of which had been furnished to the plaintiff. Plaintiff, however, was informed that he could request that his application be reopened when he was ready to proceed. Plaintiff's third application to the BCNR, which might also be classified as a reopening of the second application, was decided by the BCNR on April 29, 1987. On May 12, 1987, the Secretary of the Navy approved the BCNR decision and ordered the correction of plaintiff Bosch's naval records, and an award of a 10 percent retirement disability. The fourth and final review by the BCNR occurred after the plaintiff had already filed his lawsuit in this court. After receipt of two additional advisory opinions, and a thorough review of the lengthy administrative file, the BCNR affirmed the third BCNR decision of April 29, 1987, and awarded plaintiff a 10 percent naval disability rating. In addition, during the period between September 13, 1982, the date of the rejection of the plaintiff's first application to the BCNR, and June, 1986, this plaintiff also made six applications to the VA for disability rating modifications.

Consequently, in the case at bar, plaintiff not only has had multiple opportunities to have his situation thoroughly reviewed, he has also accumulated a massive administrative record, which includes, among other items, medical evaluations by numerous doctors, at various times, a multitude of official naval advisory opinions, statements by plaintiff and plaintiff's counsel and each of the final opinions of the BCNR. Moreover, the record plainly documents that the BCNR carefully reviewed the administrative record each time plaintiff filed a request with the Board. Therefore, in the instant case, and the parties seem to agree, summary judgment clearly is the appropriate course of action. Any form of *de novo* review in the instant case, as in *De Cicco*, would be an unnecessary duplication of the Correction Board's already completed, multiple reviews. *De Cicco v. United States*, 230 Ct.Cl. at 230, 677 F.2d at 70.

■ The ability of a service branch of the military to retire a service member because of a physical disability was established to "give the military forces of the Nation a vital and fit membership and to establish an equitable system of retirement and compensation for those eligible members whose military careers must be terminated by reason of illness or injury." 32 C.F.R. 725.101 (1981). Furthermore, "[t]he purpose of these regulations is to prescribe the administrative procedures and policies to be followed in implementing laws pertaining to discharge or retirement of members from the naval service because of physical disability." 32 C.F.R. § 725.102 (1981). The military, therefore, establishes its rating based on the service member's fitness for military service. *See* Jeffrey Glosser & Keith Rosenberg, *Military Correction Boards: Administrative Process & Review by the United States Claims Court*, 23 Am.U.L.Rev. 391, 423 (Winter 1973). The military's disability rating determination, unlike the VA's, is "directed to the sole question of whether the particular member of the armed forces is 'unfit to perform the duties of his office, grade, rank, or rating....'" *Bennett v. United States*, 200 Ct.Cl. 635, 644 (1973) (citing 10

U.S.C. § 1204 (1958)).[9]

The Secretary's discretionary authority to correct plaintiff's military records stems from 10 U.S.C. § 1552(a) (1982) which reads:

The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

It is clearly settled that the responsibility for determining who is fit or unfit for military service is not a matter for the courts to decide. "Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters," *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citing *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953)), and the task of running the military should be left to the expertise and discretion of the military. *See Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973), *Brenner v. United States*, 202 Ct.Cl. 678, 685–86 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974). Furthermore, it is well settled that:

Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the

board's when reasonable minds could reach differing conclusions.

*Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813–14; *Snell v. United States*, 168 Ct.Cl. 219, 229 (1964). As in the instant case, there exist proper grievance procedures to settle a dispute. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). Moreover, plaintiff Bosch has availed himself of the opportunity to contest the Navy's decision in this case on numerous occasions.

When contesting particular personnel actions taken by members of the Armed Forces, a plaintiff bears a difficult burden and must overcome the "strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, supported by the substantial evidence, not arbitrary or capricious and undertaken in good faith." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980); *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813; *Guy v. United States*, 221 Ct.Cl. 427, 432–33, 608 F.2d 867, 870 (1979).

Judicial review of a BCNR decision should be limited to whether the board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) (citing *De Cicco*, 230 Ct.Cl. at 228–29, 677 F.2d at 70).

In reviewing BCNR decisions under the "arbitrary and capricious" standard, the scope of review is narrow. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). "The standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence.... [A]ll of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." *Heisig*, 719 F.2d at 1157. This court must also "consider whether the decision was

**9.** The quote within the quote derives from 10 U.S.C. § 1204 (1958), and includes the same operative language as that included in 10 U.S.C.

§§ 1201 & 1203 (1976), the sections at issue in the instant case.

based on a consideration of the relevant factors and whether there has been a clear error of judgment...." *Bowman*, 419 U.S. at 285, 95 S.Ct. at 442.

Plaintiff claims that the BCNR did not fully consider all the competent evidence and, thereby, discharged plaintiff with severance pay under 10 U.S.C. § 1203, rather than with retired pay under 10 U.S.C. § 1201. In a supplemental motion for summary judgment, filed July 24, 1992, plaintiff attempts to narrow the issue for the court by stating:

> Therefore, the only area in dispute is whether Mr. Bosch's disability at time of discharge was at least thirty percent under the standard schedule of rating disabilities in use by the Veterans Administration at the time of the determination to allow medical retirement under 10 U.S.C. § 1201, or whether his disability was in fact rateable at only ten percent allowing for severance pay under 10 U.S.C. § 1203.

Since Bosch's December 16, 1981 discharge by the Navy, plaintiff has chosen to submit a large number of requests and appeals to both the BCNR and to the VA.[10] Although both the military and the VA utilize the Veterans Administration Schedule of Rating Disabilities (VASRD), the two approaches to its application are different. The BCNR applies the VA rating schedule pursuant to 32 C.F.R. § 725.518. The VA, in accordance with 38 C.F.R. Part 4, however, uses the rating schedule primarily as,

> ... a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations.

38 C.F.R. § 4.1 (1981). In other words, it is the task of the VA rating board to assign a disability rating which best reflects the level of disability relating to the service member's civilian employment impairment.

Although the VA rating decisions should not be disregarded by the BCNR, the VA's decision should be weighed by the BCNR, together with all other evidence presented by plaintiff. *Bennett v. United States*, 200 Ct.Cl. 635, 644 (1972) (citing *Wesolowski v. United States*, 174 Ct.Cl. 682, 693 (1966)). In the instant case, the evidence shows that the BCNR issued its decision with full knowledge of the VA's decision ultimately to award plaintiff a 100 percent disability rating. However, the VASRD is applied differently by the Navy and the VA, and a VA rating decision is not controlling on the disability rating decision of the BCNR. *See Bennett*, 200 Ct.Cl. at 643–44; *Unterberg v. United States*, 188 Ct.Cl. 994, 1003, 412 F.2d 1341, 1346 (1969). As stated earlier by the Court of Claims:

> So far as the action of the Veterans Administration is concerned, we have many times held that the basis for its action is different from the basis upon which a retiring board determines whether or not an officer is entitled to retirement for physical disability, and that a finding by the Veterans Administration, that a plaintiff is disabled, does not show that the finding of the Retirement Board, that he was not entitled to retirement for physical disability, is arbitrary or capricious or even erroneous. *Holliday v. United States*, *supra* [128 Ct.Cl. 647, 649 (1954) ]; *Wales v. United States*, 132 Ct. Cl. 765 [130 F.Supp. 900 (1955) ]; *Johnson v. United States*, *supra* [138 Ct.Cl. 81, 149 F.Supp. 648 *cert. denied*, 355 U.S. 850, 78 S.Ct. 69, 2 L.Ed.2d 54 (1957) ].

*Furlong v. United States*, 153 Ct.Cl. 557, 565 (1961).

The elaborate disability rating schedule used by both the VA and the BCNR is found in 38 C.F.R. § 4.132 (1981), titled "Schedule of ratings-mental disorders," Diagnostic Codes 9200–9511. Plaintiff's disorder, obsessive compulsive neurosis, as determined by the April 29, 1987 BCNR decision, which awarded plaintiff a 10 percent

---

**10.** Plaintiff has cited to the VA's June 6, 1986 100 percent rating decision as evidence of plaintiff's disability level. Therefore, it is important that the differences in application between the VA and the BCNR systems for rating disability be clearly understood.

disability rating, can be found at Diagnostic Code 9404, *et seq.* Within the 9400 series, the general percentage ratings applicable to plaintiff's case are laid out in the regulations as follows:

### PSYCHONEUROTIC DISORDERS

9400 Anxiety neurosis.

9401 Hysterical neurosis, dissociative type.

9402 Hysterical neurosis, conversion type.

9403 Phobic neurosis.

9404 Obsessive compulsive neurosis.

9405 Depressive neurosis.

9406 [Revoked].

9407 Neurasthenic neurosis (formerly psychophysiologic nervous system reaction).

9408 Depersonalization neurosis.

9409 Hypochondriacal neurosis.

9410 Other and unspecified neurosis. Read well notes (1) to (4) following general rating formula before applying the general rating formula.

General Rating Formula for Psychoneurotic Disorders:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as phantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment . . . . . . . . . . 100

Ability to establish and maintain effective or favorable relationships with people is seriously impaired. The psychoneurotic symptoms are of such severity and persistence that there is pronounced impairment in the ability to obtain or retain employment . . . . . . . . . . . . . . . . . . . . 70

Ability to establish or maintain effective or favorable relationships with people is substantially impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in severe industrial impairment . . . . . . . . . . . . . . . . . . . . . . 50

Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce considerable industrial impairment . . . . . 30

Less than criteria for the 30 percent, with emotional tension or other evidence of anxiety productive of moderate social and industrial impairment . . . . . . . . . . . . . . . . . . . . . . 10

There are neurotic symptoms which may somewhat adversely affect relationships with others but which do not cause impairment of working ability . . . . . . . . . . . . . . . . . 0

The BCNR's April 29, 1987 decision, upheld by the BCNR's most recent decision, concluded that plaintiff's disability was ratable at only ten percent according to the Veterans Administration Schedule of Rating Disabilities (VASRD), 38 C.F.R. § 4.132. The BCNR, therefore, directed that plaintiff's naval records be corrected and that Bosch be discharged with severance pay, effective December 16, 1981, pursuant to 10 U.S.C. § 1203. Plaintiff, however, alleges that the evidence presented to the BCNR should have been adequate for a finding of a 100 percent disability, or at least for a finding of a 30 percent disability, which would entitle plaintiff to medical retirement, pursuant to 10 U.S.C. § 1201, in lieu of the severance pay granted by the BCNR.[11]

---

11. *Plaintiff is actually only seeking compensation for the period December 16, 1981 to November 29, 1983. The VA had rated him at 100* percent disabled on November 29, 1983 and plaintiff has been collecting VA benefits since that date. Because 32 C.F.R. § 723.10(a)(2) pro-

In plaintiff's supplemental filing on the motion for summary judgment, plaintiff Bosch states:

Mr. Bosch can identify six individual pieces of contemporaneous evidence he relies upon to show that his disability at the time of discharge was consistent with a rating profile under the VASRD of higher than ten percent, and the rating of ten percent assigned by the BCNR was not consistent with the medical and testimonial evidence available at that time.

First he cites to the two October, 1981 reports completed by Commander R.M. Combalecer at the Naval Training Center in San Diego. The October 29, 1981 report diagnosed plaintiff with a Borderline Personality Disorder, which is an uncompensable disorder pursuant to 38 C.F.R. § 4.127. Next, plaintiff points to the March 1982 interview of plaintiff by Dr. Query, Chief of Psychology Services at the Fargo, North Dakota Veterans Administration Medical Center. In the report, Dr. Query wrote that plaintiff is "presently severely depressed ... socially very much withdrawn and lacks much energy." Dr. Query then diagnoses plaintiff as suffering from "major depression" and "borderline personality disorder." Plaintiff then draws attention to the November 18, 1983 report by Dr. Murthy of Bismark Neurologic Associates, Limited. In this report Dr. Murthy states:

He reports that during his Navy career he saw his father die suddenly of a heart attack. At that time he was serving in the submarine division and was rather anxious and depressed. However, when he went to attend Admiral's school he developed an intense anxiety reaction at one time which was described as a panicky feeling and a feeling of persecution by the teachers, etc.... He does not report any depression now and there is no prior history of psychosis or any other severe emotional problems.... Past psychiatric history is negative, no hospitalization except for a history of anxiety attacks while in the Navy.... Social

and personal history reveals that he graduated from high school, completed 5 years of college and has a B.A. degree.... Impression: Based on the clinical information, examination and history, I do not see any evidence for a long standing personality disturbance.... Diagnosis: ... No mental disorder ... No personality disorder.

Plaintiff then directs the court's attention to the June 6, 1986 VA rating decision. In that decision the VA granted plaintiff a 100 percent disability rating for service-connected Major Depressive Episode and Obsessive–Compulsive Disorder, effective November 29, 1983. Plaintiff correctly points out that the same evidence that was submitted to the VA was also submitted to the BCNR, but argues that the BCNR has failed to justify the discrepancy between the VA and Navy rating. From the record, it is clear, however, that the BCNR reviewed all the available evidence, on multiple occasions, each time plaintiff reasserted his claim to the BCNR. And, as discussed above, a disability rating by the Veterans Administration is neither binding on the BCNR nor conclusive on the issue of the extent of disability at the time of retirement. *Rutherford v. United States*, 216 Ct.Cl. 163, 170, 573 F.2d 1224 (1978) (citing *Finn v. United States*, 212 Ct.Cl. 353, 548 F.2d 340, 342 (1977); *Unterberg v. United States*, 188 Ct.Cl. 994, 412 F.2d 1341 (1969), *Williams v. United States*, 186 Ct.Cl. 611, 405 F.2d 890 (1969) *cert. denied*, 396 U.S. 966, 90 S.Ct. 447, 24 L.Ed.2d 432 (1969)).

Plaintiff next points to his work and education history, claiming that his two and one-half months of employment as an assistant to a hospital administrator, and his three days of employment with the United States Postal Service, did not qualify as substantial gainful employment. In the September 13, 1989 letter the BCNR responded:

Your alleged inability to seek or maintain gainful employment since your discharge

---

vides that a service member cannot collect twice for a disability, only the period from December 16, 1981 to November 19, 1983 represents a

period for which plaintiff had not previously received compensation and for which plaintiff possibly could be entitled to an award.

in 1981 is not considered to be probative of your contention that you have been unemployable and totally disabled as a result of a mental disorder which was incurred in or aggravated by your naval service. The Board noted that your civilian employment history prior to your discharge is characterized by a number of relatively brief periods of employment, with substantial periods of unemployment. Although your employment opportunities may have been limited by your frequent changes of residence and your attendance at three different educational institutions during the period between your two enlistments, the fact remains that you did not demonstrate any significant ability to succeed in a civilian work environment prior to your discharge in 1981.

Last, plaintiff directs the court to what he characterizes in his briefs as "retrospective evidence," which he feels gives credence to his entitlement to a 100 percent disability rating. Among this evidence is plaintiff's hospitalization in January 1985, another examination by Dr. Combalecer and several outpatient reports by various therapists. All of this evidence was clearly considered by the BCNR and referenced in their various decisions. In its September 13, 1989 letter the board stated that:

Although you have submitted records prepared by various mental health care professionals who are of the opinion that you have been totally disabled since your discharge, none of those records was made contemporaneously with your discharge or within a reasonable time thereafter, and all appear to be based in part on questionable representations which you made concerning the history of your mental disorder. The majority were made without reference to your naval record, and contain no indication that the disability evaluation standards which are employed by the military departments were considered by the examiners.

Simply because the BCNR did not explicitly list the name of every therapist visited by plaintiff in its 1987 or 1989 decisions, does not mean that the BCNR ignored that evidence. It is true that a naked conclu-

sion and mere assertion that the opinion is based upon all of the evidence, absent a written analysis of the evidence, is inadequate. *See Beckham v. United States,* 183 Ct.Cl. 628, 636, 392 F.2d 619 (1968). "However, 'if the court can discern from the record that the Secretary had sufficient evidence before him to reach the conclusion he did, it must hold, based upon its limited scope of review, that the Secretary did not act arbitrarily or capriciously.' " *Fabing v. United States,* 18 Cl.Ct. 769, 774 (1989) (quoting *O'Neil v. United States,* 6 Cl.Ct. 317, 320 (1984)). The plaintiff, Bosch, has not advanced evidence to overcome the presumption that the Navy acted lawfully and fairly in his case. Moreover, a review of all the evidence in plaintiff's case plainly supports the conclusions reached in the April, 1987 BCNR decision, as reaffirmed by the most recent detailed BCNR decision in 1989. Therefore, under the applicable limited scope of review, this court must find that the BCNR acted properly and that the plaintiff, Bosch, is not entitled to the relief he seeks.

## CONCLUSION

Based on the evidence presented by the parties, including the voluminous administrative record and the filings before this court, the court finds that the BCNR did not act arbitrarily or capriciously when it assigned only a 10 percent disability rating to the plaintiff upon discharge. Defendant's motion for summary judgment is, therefore, GRANTED and plaintiff's cross motion for summary judgment is DENIED.

IT IS SO ORDERED.